## JOHN W. HARRIS v. H. MASTERSON.

### No. 570.—Decided June 26, 1897.

**Estoppel—Merger—Foreclosure—Primary Fund—Superior Title—Redemp-
tion.**

H. having bought land for notes secured by lien reserved in the deed, conveyed it
to D., who assumed the payment of such incumbrance as part consideration and
gave his notes for the remainder, securing this entire consideration by lien which,
as to D.'s notes only, was afterwards foreclosed in suit by H., and the judgment then
sold by him, before execution, to M., the plaintiff.    M. had previously bought from
the original vendor his superior title to the land and the purchase money notes
given by H., and he afterwards sold and bought in the land under the judgment of
foreclosure obtained by H against D.    In a suit by M. against H. and D. to fore-
close the lien of the note originally given by H., the latter tendered payment and
sought to redeem.    Held·

(1)  H. was not estopped by his sale of the judgment against D. from asserting
against the latter the lien for debt, assumed by him, reserved in the deed from H.
to D.    (P. 177.)

(2)  Plaintiff's purchase at the foreclosure sale under the judgment recovered by
H against D. did not by merger of the titles relieve H. from liability on the note
sued on; for:

(a)  M. purchasing under the judgment was in the same position as if he had bought
directly from D.—the case not being distinguishable from that of a mortgagor who
had assumed to pay the mortgage debt, and who, in turn, conveys the land to the
mortgagee.

(b)  In such case the legal and equitable title unite in the mortgagee, who may
ordinarily elect to treat the mortgage as merged, or still in existence, as his inter-
ests may require, if the rights of third parties are not affected and there is no agree-
ment to the contrary.

(c)  But in such case, as between the mortgagor and his grantee and those claim-
ing under him, the land becomes the primary fund for the payment of the debt.

(d)  The title of M. to the land, by his purchase of the superior title and debt, be-

came complete as against all parties to the transaction, but he had a right to pro-ceed against H. for the debt, the latter being entitled to demand that the land, as the primary fund, should be first subjected to its payment. (P. 176.)

(3) The judgment should have provided that the land sold to M. under the judgment against D. should be again sold before execution issued against H. personally; for:

(a) No equity of redemption was left in H.; but, all the parties being before the court, to avoid circuity of action the decree should be framed so as to require the primary fund to be exhausted before issuing execution against H.

(b) The fact that H. assigned to M. his judgment against D. for a valuable consideration made no difference with the rights of the parties.

(c) It was immaterial that at the time of the transfer of the judgment from H. to M. the latter had no actual knowledge that D. had assumed the payment of the former notes. Though the record of the foreclosure did not disclose the fact and the deed was not on record, he had constructive notice through his chain of title. (Jumel v. Jumel, 7 Paige, Ch., 591.) (P. 177.)

QUESTIONS CERTIFIED by Court of Civil Appeals for First District, in an appeal from Brazoria County.

*A. R. Masterson*, for appellant.—The appellee having elected to affirm the executory contract for the sale of the land, to appellant, and his co-defendants in the suit, by suing upon the notes executed by them for the purchase price of said land, they, having paid the greater portion of the contract price, were entitled to a specific performance of the contract, upon payment of the balance of the purchase money due, and upon such payment to take title; unless by their conduct or representation they were in equity estopped to assert such right of specific performance. Stephens v. Motl, 82 Texas, 81; Pierce v. Moreman, 84 Texas, 596; Robinson v. Kampman, 5 Texas Civ. App., 605; Cattle Co. v. Boon, 73 Texas, 556: Ufford v. Wells, 52 Texas, 619; Foster v. Powers, 64 Texas, 247; White v. Cole, 87 Texas, 501; Bradford v. Knowles, 86 Texas, 505; 2 Jones, Mortg. (5th ed.), sec. 1075; Collins v. Riggs, 14 Wall., 491.

To defeat appellant's legal right to specific performance of the contract of sale of the land on the ground of "estoppel," it must be shown that appellant, by false representations, or by his course of conduct, or his silence as to a material matter connected with the subject of the sale of the judgment of Harris v. Disney to appellee, induced appellee to believe that appellant had no other rights or remedies against Disney. The appellant at the time having full knowledge that his silence as to Disney having assumed the payment of the two original vendor's lien notes would have influenced appellee against the purchase of said judgment. Westbrook v. Guderian, 3 Texas Civ. App., 406; Blum v. Merchant, 58 Texas, 400; Scoby v. Sweatt, 28 Texas, 731; Watson v. Hewitt, 45 Texas, 472; Lewis v. Castleman, 27 Texas, 421; Echols v. McKie, 60 Texas, 41; Mort. Co. v. Norton, 71 Texas, 683; Bynum v. Preston, 69 Texas, 287.

The land purchased by appellant and his co-defendants from the Brazoria Land and Cattle Co. was pledged by them to said company and its assigns, by the terms of the sale and contracts sued on, and appel-

lant's equities set up in his answer entitle him to have said security exhausted before resorting to other property for the payment of the debt.    Same authorities; also Story's Equity, sec. 640.

When appellant tendered the amount due appellee on the notes sued on he became entitled to a specific peformance of the contract (notes sued on) by a decree for the land and to have his contract of sale to Disney fulfilled.    McPherson v. Johnson, 69 Texas, 484; Kalklosh v. Haney, 4 Texas Civ. App., 118; Roberts v. Lovejoy, 60 Texas, 253; Graham v. Stephen, 15 Texas, 93; Yeamans v. Tone, Dallam, 362; Hemming v. Zimmerschitte, 4 Texas, 163; Brock v. Jones, 16 Texas, 465.

The court should have decreed a specific performance of the contract, conditioned that appellee be subrogated to the rights and title of both Disney and appellee (Harris) upon surrendering to appellant the notes sued on which said Disney assumed to pay and returning to appellant the money he tendered into court, when so deposited by appellant in accordance with said tender.

*H. Masterson*, appellee, in pro. per.—Appellant having sold and conveyed away his title and interest to L. M. Disney in the property purchased by him and others under an executory contract from the Brazoria Land and Cattle Company, and received therefor promissory notes of his vendee, Disney, and afterwards obtained judgment against his vendee on said notes foreclosing his vendor's lien, and then selling and conveying that judgment to appellee for the full amount thereof, to-wit: Eleven hundred and fifteen and $\frac{40}{100}$ ($1115.40) dollars, and at all times remaining silent as to any other claim he has against, or rights in, the property, can not afterwards claim the right of specific performance and thus obtain the property he has already sold for $1115.40, for $356, or one-eighth of his own obligation to the Brazoria Land and Cattle Company.    The inflexible rule is, "He that seeks equity must do equity."    Equity will not afford relief where there is an adequate remedy at law.    58 Texas, 295; 71 Texas, 250; 29 Texas, 72; 1 Texas, 45; 6 Texas, 261; 23 Texas, 515; 3 Texas, 99; 17 Texas, 318; 21 Texas, 231; 27 Texas, 231; 36 Texas, 288; 38 Texas, 272.

The holder and owner of a promissory note secured by lien on property has the right to waive his lien if he desires to do so, and sue on the note alone, and recover judgment thereon.    The maker of a note cannot have a lien upon the property of the payee in such note to secure the payment thereof.

All matters that are proper to be determined in a suit between the same parties relative to the subject matter of litigation, if not urged, will be considered waived, and can not again be brought into question. It is the policy of the law to avoid multiplicity of suits.    When Harris sued Disney foreclosing his lien on this land, and failed even to refer to any other secret, that is, unrecorded lien, he had against the same land by the same party, and afterwards realizing on his lien foreclosed, and

still remains silent as to the other claim, it will be considered waived. 18 Texas, 304; 33 Texas, 165; 1 Texas, 605; 2 Texas, 68; 6 Texas, 187.

GAINES, CHIEF JUSTICE.—The Court of Civil Appeals for the First Supreme Judicial District, has certified to this court the following statement and questions:

"The questions stated below are respectfully certified to the Honorable Supreme Court for decision, being material to the determination of the above cause pending in this court:

"On the 25th day of February, 1891, the appellant jointly with W. J. Moore, A. S. Newson and J. C. Lange executed to the Brazoria Land and Cattle Company four promissory notes, each for the sum of $995, with interest at the rate of 8 per cent per annum, and maturing respectively in one, two, three and four years, and which notes were in part consideration of a sale of 640 acres of land situated in Brazoria County, made on said day by the payee to the payors of said notes; the vendor's lien was retained in the deed of conveyance and the land was conveyed in separate proportions to the vendees, the proportion of the appellant Harris being one-eighth; between the payors of the notes, it was agreed and understood that each should contribute to the payment and discharge of the notes in proportion to his share in the land conveyed them. The two first of these notes were paid; afterwards, but before the maturity of either of the two last named notes, the appellant Harris conveyed his one-eighth interest in said 640 acres to his joint obligor, L. M. Disney, and in consideration of which, Disney executed his promissory notes, amounting in the aggregate to $839, bearing interest at 8 per centum, and providing for the payment of 10 per cent upon the amount of the notes in case they should be collected by suit; and he further obligated himself to pay Harris' proportion of the two notes still due the Land and Cattle Company; and the vendor's lien was reserved in the deed from Harris to Disney; and the latter having made default in the payment of the first note upon its maturity, Harris, as he was authorized to do, by the terms of the sale, brought suit to recover the amount due upon each of Disney's notes, and judgment was rendered therefor with a foreclosure of the vendor's lien on one-eighth of the 640 acres of land; the deed of conveyance recited Disney's obligation to pay Harris' indebtedness to the Land and Cattle Company, was not registered.

"Appellee, Masterson, after the maturity of the last of the notes, executed to the Land and Cattle Company, acquired said notes by purchase; and he also acquired by deed of conveyance from said company the superior title to the said 640 acres of land. After this, appellee purchased from appellant the latter's judgment against Disney, paying in cash therefor, the sum of $1115.40. At the time of this purchase no reference was made by Harris to Disney's obligation to pay his (Harris') share of the debt still due on the notes executed to the Brazoria Land and Cattle Company, and appellee did not know of an assumption by Disney

of appellant's debt to said company, and that the deed from Harris to Disney retained a lien on the property to secure the performance of this agreement by Disney. Neither the judgment obtained by Harris against Disney, nor the pleadings in that suit disclosed either of these facts; and the deed of conveyance, as we have stated, from Harris to Disney was not registered; the evidence further shows that, had appellee known of this assumption by Disney, he would not have purchased from Harris his judgment foreclosing the lien upon the one-eighth of the 640 acres of land. The evidence also shows that appellee knew the notes assigned him by the Land and Cattle Company were given in part payment, for the 640 acres of land, and that they were secured by lien expressly retained in the deed of conveyance from the vendor to the vendee. The appellee caused the judgment and decree of foreclosure rendered for Harris against Disney, to be executed, and at the sale of the land, he purchased the same for the sum of $100, which was credited on the judgment.

"Upon the refusal of Harris to pay his proportion of the notes assigned by the said company to appellee, the latter instituted this suit. All of the obligors in said notes, except appellant and Disney, paid their respective portions of the indebtedness to said company; plaintiff sought judgment only against Disney and Harris, and against the latter, a personal judgment was prayed, without prayer for the foreclosure of the lien retained in the deed from the Land and Cattle Company. Upon trial of the cause, appellant tendered into court one-eighth of the sum due upon the notes sued on, and prayed that he might be allowed to redeem "his one-eighth interest in the land"; this was refused by the court, and judgment was rendered for plaintiff against Harris for one-eighth of the amount of the notes sued on; but allowing him to redeem the one-eighth interest in said land upon payment to plaintiff of the amount paid by the latter to Harris, for his judgment against Disney; to this judgment Harris excepted and gave notice of appeal.

"Upon this statement of the case, we respectfully request an answer to the following questions:

"1. Is appellant estopped by reason of his sale of the judgment against Disney, to appellee, from asserting against the latter, the lien reserved in the deed from Harris to Disney? .

"2. If appellant is not estopped, did the purchase by appellee at the foreclosure sale of Disney's equity of redemption in the one-eighth of the 640 acres of land conveyed to Disney by Harris, cause a merger of this equity into the superior title to the land, then owned by appellee, and if there was such merger, is appellant thereby relieved from the liability on the notes sued on?

"3. If appellant be still liable on the notes sued on, but is not estopped from enforcing lien renewed in the deed from him to Disney, should the judgment against him have provided that the land which was sold under the judgment against Disney, and purchased by appellee for

$100 should be again sold at public auction, before execution should issue against appellant?"

Divested of its unimportant surroundings and briefly stated, the case is practically this: Harris, the appellant, bought of the Land and Cattle Company an undivided interest in the tract of land, paid part of the purchase money and gave his notes for the balance with a lien on the land. The notes were assigned to the appellee, Masterson. In consideration of the assumption by Disney of the unpaid balance due upon his notes and of cash payment by Disney, as well as of an additional sum to be paid by him, as evidenced by his two promissory notes, Harris conveyed the land to Disney, reserving a lien upon it to secure Disney's obligations. Disney, not having paid the first note, Harris brought suit and obtained a judgment with a decree foreclosing his lien upon the land for his unpaid purchase money. This judgment, he sold and transferred to Masterson. Masterson caused the land to be sold by virtue of the decree, and became the purchaser at the sale. It is, as we think, a matter of no moment, that Harris obtained a decree of foreclosure and transferred it to Masterson. Masterson having caused the decree to be executed, and having purchased the land at the execution sale, is in the same position as if he had purchased directly from Disney; hence, the case is not distinguishable in principle from that of a mortgagor who has conveyed the mortgaged premises to a grantee who has assumed to pay the mortgage debt, and who in turn conveys the land to the mortgagee. In such a case, the legal and equitable title unite in the mortgagee, and if he waives his claim to the mortgage debt, all adverse claims against the mortgaged premises are extinguished. But can he proceed against the mortgagor for his original debt? In similar cases, the authorities seem to hold that the question of merger depends upon the intention of the parties and the equities of the particular transaction. The rule, however, seems to be, that ordinarily where the mortgagee acquires the equity of redemption in the land, he may elect to treat the mortgage as merged or as still in existence, as his interest may require; provided this may be done without prejudice to the rights of third parties, and there be no agreement to the contrary.

But when the mortgagor has conveyed the mortgaged premises, and the grantee has assumed the mortgage debt, the land, as between the mortgagor and his grantee and all persons claiming under the latter, becomes the primary fund for the payment of the debt. Jumel v. Jumel, 7 Paige (N. Y.), 591; Baker v. Terrell, 8 Minn., 195; Stillman v. Stillman, 21 N. J. Eq., 126.

When Masterson acquired, what is inaccurately called under the rule which obtains in this State, the equity of redemption in the premises subject to the lien—being at the same time the owner of the debt secured—his two rights coalesced, and his title to the land became complete as against all parties to the transaction. He had, however, the right to elect to proceed against Harris for the debt (Jumel v. Jumel, supra), but when he chose to exercise that right, Harris was entitled

to demand that the land as the primary fund should be first subjected to its payment. Such would have been the latter's right against Disney if Disney's equity of redemption had not passed from him, or against any third party who had acquired Disney's title,—that is, upon payment of the debt, he could have proceeded against the land in the hands of the owner for reimbursement. Masterson, by reason of the fact that he held the secured debt, had no higher right in that respect than any other purchaser of Disney's title. We also fail to see that the fact that Harris assigned his judgment against Disney to Masterson for a valuable consideration, makes a difference as to the substantial rights of the parties. These principles are recognized in some of the cases cited above, and also in the following: Funk v. McReynolds, 33 Ill., 481; Byington v. Fountain, 61 Iowa, 512; Kinnear v. Lowell, 34 Me., 299; Fletcher v. Chase, 16 N. H., 38.

Since, however, the debt secured by the lien and the legal title have united in Masterson, and all the parties at interest are before the court, there is a difference as to the remedy. If a third person had acquired Disney's title, probably Harris could have been forced to pay his debt, and then to proceed in another action to subject the land to his claim for reimbursement. But a court of equity in a case like this, where the necessary parties are before it, will, in order to avoid circuity of action, so frame its decree as to require the primary fund to be exhausted before suing out execution against the debtor.

Harris having sold the land to Disney, and Masterson having acquired Disney's title, it is clear that no equity of redemption was left in Harris.

We deem it immaterial that at the time of the transfer of the judgment from Harris to Masterson, the latter had no actual knowledge that Disney had assumed the payment of the former's notes. He had constructive notice through his chain of title. Jumel v. Jumel, supra.

We find no element of estoppel in the transaction. Certainly, since Harris has the right to resort to the land in the hands of Masterson, as the primary fund for the discharge of his debt, just the same as if it had remained Disney's, his position is not changed for the worse.

Such being our conclusions as to the law of the case, we answer the questions categorically, as follows: The first and second in the negative, and the third in the affirmative.