## FARMERS' & MERCHANTS' STATE BANK OF BALLINGER v. CAMERON et al.
(No. 190–3239.) •

(Commission of Appeals of Texas, Section B. June 8, 1921.)

**1. Appeal and error ⬠1094(2)—Finding of usury approved by Court of Appeals not reviewed.**

Whether usury entered into notes being a matter demonstrable by calculation, and none being presented in the record to show that it did not, and the trial court's finding that it did having been approved by the Court of Civil Appeals, it is not within the province of the Commission of Appeals to consider the matter.

**2. Usury ⬠137—Held paid and received by purchase under deed of trust, allowing recovery of penalty.**

Usury is paid and received, allowing recovery of double penalty under Vernon's Sayles' Ann. Civ. St. 1914, art. 4982, where holder of usurious note secured by deed of trust, at trustee's sale thereunder bought, for more than was due, excluding usury, and the full amount of the bid was credited on the note, and a deed was made by the trustee to the purchaser; the title to the property thereby passing to him.

**3. Mortgages ⬠282(4) — Proceeding against mortgaged property before action against its purchaser necessary.**

Before a purchaser of land, who had assumed, as part of the consideration, a deed of trust thereon, can be proceeded against personally on the secured notes, the land which is the primary fund for payment thereof must be exhausted by sale under the deed of trust.

Error to Court of Civil Appeals of Eighth Supreme Judicial District.

Action by S. M. Cameron and others against the Farmers' & Merchants' State Bank of Ballinger. Judgment for plaintiffs was affirmed by the Court of Civil Appeals (203 S. W. 1167), and defendant brings error. Affirmed.

Jno. I. Guion and M. C. Smith, both of Ballinger, for plaintiff in error.

R. B. Truly, of Eastland, and Snodgrass, Dibrell & Snodgrass, of Coleman, for defendants in error.

### Statement of the Case.

KITTRELL, J. The facts out of which this case arose, stated as concretely as is consistent with clearness, are as follows:

On April 20, 1910, the Camerons executed their note to the bank for $4,600 payable at three months. There had been a previous note for $3,000 given, or at least credits to that amount in favor of the Camerons had been entered on the books of the bank, somewhere between two and three weeks before April 20, 1910, in contemplation of the use of the money in buying a lot of mares out on the Rio Grande border.

They bought to the extent of $4,600, or $1,600 in excess of the deposit, and their drafts to the extent of $4,600 were paid by the bank. The entire indebtedness was on April 20th put into one note for $4,600, and the jury found that $138 interest was paid by the Camerons on the day the note was given, but it was extended for the full amount, and was again extended when it fell due.

Other notes were given from time to time, and certain payments were made, and other money borrowed or other advances made to or for the Camerons by the bank over a period of time of about four years; the total number of notes in the way of extensions of the original note and additional amounts for new advances being 14.

The series of loans and payments and extensions finally culminated in one note for $10,530, dated March 31, 1914, bearing 10 per cent. interest, and due January 1, 1915, with interest from maturity until paid.

The Camerons, coincident with the execution of said note, executed a deed of trust on five several tracts of land situated in Runnels county. The deed of trust was in the usual form.

Default having been made in payment of the note, the trustee in due and regular form sold the land at public sale on April 6, 1915, for the purpose of paying the notes, less the credits.

It appears that there were a number of bidders, but the highest bidder was the bank, and the land was adjudged and knocked off to it for the amount of its bid, which was $8,750, the full amount of which was credited on the note, and a deed made by the trustee to the bank, of which institution he was cashier.

The Camerons on September 25, 1915, filed suit against the bank to recover upon an alleged claim of usury, alleging as a summary of all their specific allegations as follows:

"That the actual indebtedness due from plaintiffs to defendants at the time of the sale of said land was only the aggregate sums hereinbefore mentioned, to wit, $10,900; less actual payments and credits hereinbefore set out in the aggregate sum of $5,893.24; making actual indebtedness due from plaintiffs to defendant the sum of only at the time of the sale $5,007.35."

They plead that, the property having been sold for $8,750, and the acceptance of said bid, and the crediting of the $8,750 on the indebtedness, the said defendant collected $3,742.65 usurious interest, and prayed judgment for double that amount, and prayed in the alternative for the difference between $8,750 and $5,007.35, which is $3,742.65.

The case was submitted on 42 special is-

sues prepared by the court and other special issues submitted at request of counsel.

The judgment recites that defendants had "received and collected from the plaintiffs * * * $3,577.15 usurious interest, and judgment was rendered for double that amount, or for $7,154.30.

Defendant by way of cross-action alleged, in substance, that certain parties, Terry by name, had executed to the British & American Mortgage Company, Limited, their note for $3,000 secured by deed of trust on two of the tracts of land for which plaintiffs had given the bank a deed of trust, being the first two tracts described in plaintiffs' petition, aggregating 341½ acres; that, while the note and security were valid and subsisting, the Terrys conveyed the two tracts to the plaintiffs, who assumed the payment of the $3,000 note executed by the Terrys; that later, July 1, 1912, the Camerons agreed with the mortgage company upon an extension of payment of the note for five years from November 1, 1912, at 8 per cent., payment to be made in certain installments not necessary to enumerate. Later the time of payment of certain of the installments was extended.

Defendant alleged that it owned the $3,000 note by assignment in writing from the mortgage company, and that certain specified installments of interest had not been paid, wherefore they had declared the whole debt due.

The proof showed that the mortgage company on September 7, 1916, for value received, assigned the trust deed and the $3,000 note to the defendant bank without recourse.

When the transfer was taken, the note for $240 first mentioned in the extension agreement had been paid. The bank paid it before the transfer. It had paid the first three principal notes, and the interest note had been taken up. This had been done without request of the Camerons.

The bank prayed for personal judgment on the note against the Camerons, alleging they were notoriously insolvent, and prayed that, if any judgment be recovered against it, it be offset by the judgment on the $3,000 note.

In response to a special issue the jury answered that the bank bid solely for the equity of the Camerons in the land. The court adjudged that the bank take nothing by its cross-action.

## Opinion.

The case may properly be determined upon the assumption that the transactions out of which the litigation arose were tainted with usury. As we construe the record, and the assignments of error, there is in the application for writ of error no serious attack made upon the findings of the jury by the motion for a new trial, or upon the conclusions of the Court of Civil Appeals as to the question of usury.

[1] Whether usury entered into the notes was a matter demonstrable by calculation, and none is presented in the record to show that it did not, and, the trial court's finding that it did having been approved by the Court of Civil Appeals, it is not within our province to consider the question.

[2] The plaintiff in error contends, as we interpret the application for writ of error, that even if it be conceded that usury had been paid, nevertheless the sale under deed of trust was "involuntary" payment, and that by reason of that fact the defendant bank did not in fact "collect" or "receive" usurious interest so as to bring its action within the purview of article 4982, V. S. C. S. This is the first of the only two questions presented by the application.

In a technical sense the sale may have been, indeed was, involuntary as to plaintiffs, but it was certainly not "involuntary" as concerns the defendant bank. Pursuant to the provisions of the deed of trust, it sold the property and bid $8,750, and the property was knocked off to it (the bank), and the whole amount of the bid was credited on the debt, and the bank received a deed to the property.

What does, and what does not, constitute "payment" of usurious interest is a question which has been frequently before the courts, and is one by no means free from difficulty. We have not been able to find any case entirely like the instant case. Before the writer became a member of the court the case of Gunter v. Merchant, 213 S. W. 604, was decided by this section of the Commission in a very clear and instructive opinion by Judge Sadler, which was approved by the Supreme Court. The facts of that case and this were wholly different, but the question of what constituted payment was discussed at length. It is the law that to reserve out of a loan interest in advance at a rate beyond the legal limit does not constitute payment of usury.

Where the plaintiff, appellee, borrowed $200 and gave his note for $235 and afterwards made five payments of $17.50, aggregating $87.50, plaintiff was held entitled to recover only the $87.50 or double that amount; the $35 not having been in contemplation of law actually paid. Rosetti v. Lozano, 96 Tex. 57, 70 S. W. 204.

Where usurious interest was included in a note given in renewal of a note bearing usurious interest, it was held recovery could not be had under the penalty statute until the usurious interest was actually paid, and including the interest in a renewal note was not actual payment (First Nat. Bank v. Lasater, 196 U. S. 115, 25 Sup. Ct. 206, 49 L. Ed. 408; National Bank, etc., v. Ragland, 181 U. S. 45, 21 Sup. Ct. 536, s. c. 45 L. Ed. 738), and giving additional note for usurious

interest is not payment (Brown v. Bank, 169 U. S. 416, 18 Sup. Ct. 390, 42 L. Ed. 801).

The usurious interest must actually have been paid, and where all payments were credited on the principal and the usurious note has not been fully paid, the penalty cannot be recovered. Allen v. Bank, 175 S. W. 485.

Obviously none of the cases above cited are in "all fours" with the instant case, but are helpful in enabling us to arrive at what we conceive to be a correct conclusion.

The property was sold by due and regular course of procedure in accordance with the provisions of the deed of trust, and, if it be conceded that only $5,007.35 of the $8,750 was really due on the note outside of the alleged amount of usury, certainly the sale was good as to the amount concededly due. It was so adjudged in Hemphill v. Watson, 60 Tex. 679.

In the absence of authorities directly in point we are left to deal with the question in the light of general principles. Concededly the title to the property passed to the defendant by the sale, regardless of whether the part of the bid made up of usurious interest be taken into consideration or not. Hemphill v. Watson, supra. The entire bid was credited on the note, and the record reveals no attempt by cross-action or otherwise on the part of defendant to recover the deficiency on the $10,530 note. If the note secured by the deed of trust had been for only $8,750, and the bid had been credited on the note, the debt would have been fully discharged, in other words, have been "paid" by plaintiffs, and the payment would to the extent of all the bid above $5,007.35 have been in the form of usurious interest, and would have been recited in the trustee's deed as part of the consideration received from defendant for the property. If, as defendant contends, that much of the bid was the same as no payment at all, yet the defendant treated it as payment, and the trustee received it as such, and to the extent of $3,742.-65 it was part of the bid. We can see no distinction in legal effect between that situation and proceeding, and what actually took place.

It is settled law that no cause of action to recover back usurious interest accrues until such interest has been paid. Cyc. vol. 39, p. 1034. It is likewise the law that it is not necessary that the payment be made in money, but it is sufficient if it be made in property. As a general rule the right to recover usury cannot be exercised so long as any part of the debt which is justly due, principal and interest, remains unpaid. Authorities supra.

In some jurisdictions the general rule of law prevails that money paid voluntarily as usurious interest cannot be recovered. The ground of such holding is that the parties are held to be in pari delicto. In such states the rule has been applied in cases wherein the payment of the usurious interest is obtained by exercise of power of sale. The sale being made under power conferred by the borrower himself, it is treated as if he had made it. R. C. L. vol. 27, p. 271. It seems to us that the rule just stated is applicable in this state where recovery is allowed where usurious interest is paid voluntarily. The property was sold under a power conferred by the Camerons; and the title passed out of them by the sale, in consideration of at least the valid portion of the debt, and, as we have said, there is no evidence revealed by the record of any attempt to collect the difference between the bid of $8,750 and the $10,530 note and interest, aggregating $10,900, which fact evidences that the bank treated the debt as paid. This being true, if the authorities cited are applicable, as we think they are, the question presented whether the sale and the crediting of the bid on the debt and receiving a deed to the property by the bank was equivalent to a payment by the Camerons and the receipt by the bank of usurious interest must be answered in the affirmative.

The defendant took title to the property upon a bid for it of $8,750 and thereby to that extent the debt of plaintiff was paid, and we are unable to escape the conclusion that plaintiffs actually "paid" and the defendant actually "received" usurious interest. We cannot conceive by what process of reasoning the bid and the crediting of it on the debt thereby pro tanta discharging the debt can be held to be sufficient consideration to pass title to the land, and at the same time not operate as "payment" of usurious interest included in the note.

[3] The second and remaining question presented for determination is no less difficult than the first. Two of the tracts of land described in plaintiff's pleadings and included in the deed of trust given by the Camerons to the bank had previously been conveyed by the Terrys to the Camerons, the latter assuming, as part of the consideration for the conveyance, a deed of trust upon the land which had previously been given by the Terrys to a mortgage company to secure a note for $3,000. Later the bank acquired by purchase the notes given by the Terrys to the mortgage company, together with the deed of trust lien securing it. In the present suit the bank by way of cross-action and counterclaim sought a personal judgment against the Camerons upon their assumption of this note, but did not ask for a foreclosure of the deed of trust lien, nor did they pray to have the land securing the $3,000 note subjected to the payment of the note as a primary fund. The trial court rendered judgment against the bank upon this cross-action and counterclaim, and the Court of Civil Appeals affirmed that judgment.

This ruling, we think, was correct under the authority of Harris v. Masterson, 91 Tex.

171, 41 S. W. 482. We do not deem it necessary to enter upon an elaborate analysis of that case, or to set forth the certified questions and answers thereto. It is sufficient to say that that case holds that, where a vendee who is personally liable upon vendor's lien notes conveys the land to a third party, and the latter assumes the payment of the notes, the land becomes a primary fund for the payment of those notes, and the holder of the notes can be required by the original vendee to exhaust the vendor's lien upon the land before personal judgment can be rendered against the vendee upon his personal obligation upon the vendor's lien notes, and personal judgment thereon can be rendered only in case of and to the extent that the land fails to satisfy the notes.

In the present case, when the Terrys sold the land to the Camerons, and the latter assumed the deed of trust obligation which the Terrys had given to the mortgage company, the land thus conveyed became the primary fund for the payment of those notes, and before personal judgment could be recovered against the Terrys that primary fund would have to be exhausted. When the land was later sold by the bank in satisfaction of the latter's second lien, the sale was, by stipulation in the conveyance, made subject to the deed of trust given by the Terrys to the mortgage company; and before personal judgment could be rendered against the Camerons, upon their assumption of the Terry $3,000 note, the bank would have to exhaust the primary fund, that is, the land conveyed by the Terrys to the Camerons, before the Camerons could be required to respond personally upon their assumption of the $3,000 note. As the bank did not ask for this relief, but only prayed for personal judgment against the Camerons upon their assumption of the $3,000 note, the trial court, we think, correctly denied the relief prayed for, and the Court of Civil Appeals correctly affirmed that judgment.

We therefore recommend that the judgments of the district court and Court of Civil Appeals be affirmed.

PHILLIPS, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.