## HILL v. PRESTON et al.   (No. 3406.)

Court of Civil Appeals of Texas. Texarkana.
May 31, 1927.

Rehearing Denied June 9, 1927.

1. **Vendor and purchaser** ⬥264—Purchaser, having conveyed land and surrendered possession, parted with right of redemption and thereafter became surety for payment of vendor's lien notes.

Purchaser of land, having executed vendor's lien notes for the purchase price, on conveyance of the land and surrender of his possession to his grantees parted with his right of redemption, and thereafter became surety for payment of the vendor's lien notes.

2. **Vendor and purchaser** ⬥263—Plaintiff having conveyed land and surrendered possession was without right to reclaim land when last vendee surrendered possession to original vendor.

Where plaintiff purchased land and executed vendor's lien notes for price and sold land and surrendered possession to his grantees, who assumed payment of the notes and who conveyed the land to W., subject to the vendor's lien, plaintiff, having parted with right of redemption, was without right to repossess land at time W. rescinded transaction and surrendered possession to plaintiff's grantor in extinguishment of the unpaid notes.

3. **Vendor and purchaser** ⬥263—Oral agreement that vendor repossess land and credit revenues to plaintiff being without consideration, grantor's executor was not estopped from claiming revenues.

Where plaintiff, as purchaser of land, conveyed it subject to vendor's lien notes which his grantees assumed and possession was surrendered to them, and thereafter they conveyed land to W., and plaintiff had no right of possession or repossession at time he was advised by his grantor's agent that W. was willing to surrender possession to plaintiff or his grantor, oral agreement that grantor's agent could repossess land and credit revenues therefrom to plaintiff was without consideration, and grantor's executor was not estopped from claiming revenues.

4. **Vendor and purchaser** ⬥263—Conveyance by subsequent grantee to plaintiff's vendor closed equity of redemption and created no equity in plaintiff as original purchaser.

Where plaintiff, purchaser of land, conveyed it subject to vendor's lien notes and surrendered possession to his grantees, who assumed notes and thereafter conveyed to W., plaintiff having no possession or right to possession at time W. rescinded transaction and surrendered land to plaintiff's grantor in extinguishment of the indebtedness, conveyance by W. to original grantor closed all equity of redemption of W. and created no equity in plaintiff.

5. **Trusts** ⬥63¾—Reconveyance of land by ultimate purchaser to plaintiff's vendor held not to create resulting trust in plaintiff.

Where plaintiff, purchaser of land, conveyed it subject to vendor's lien notes and surrendered possession, and his grantees conveyed it to W., since, at time of conveyance by W. to plaintiff's vendor in extinguishment of the indebtedness of plaintiff to his vendor, plaintiff was without possession or right of possession of the land, and W. had sole equity of redemption, conveyance by W. to plaintiff's vendor *held* not to create a resulting trust for plaintiff.

Error from District Court, Anderson County; Ben. F. Dent, Judge.

Action by W. L. Hill against C. S. Preston and others. From a judgment for defendants, plaintiff brings error. Affirmed.

A general demurrer was sustained to plaintiff in error's petition, and the appeal is to review that ruling of the court. The ultimate facts set forth in the petition are that Richard Lloyd, owner of a large tract of land, conveyed it to the plaintiff, W. L. Hill, he executing vendor's lien notes for the purchase price. W. L. Hill then conveyed the land to La Roe and Parker, who assumed and agreed to pay the notes executed by W. L. Hill to Richard Lloyd, the payment of which was secured by a lien retained in the deed from W. L. Hill to La Roe and Parker. La Roe and Parker then conveyed the land to Scott Woodward, who did not assume the payment of the notes, but who took the land subject to the liens of Richard Lloyd. Scott Woodward failed to pay La Roe and Parker, and they failed to pay the interest due for the year 1921 on the vendor's lien notes assumed by them. All three parties, being unable to pay, were desirous of reconveying the land in extinguishment of the unpaid purchase price owing by them and in rescission of the trade. La Roe and Parker then "notified the said Richard Lloyd that they were not able to pay the interest on said notes, and that Scott Woodward (who was claiming the land under conveyance from La Roe and Parker) was willing to give up said land and surrender the possession thereof to the said Richard Lloyd or to W. L. Hill, the plaintiff." Thereupon on December 20, 1921, Richard Lloyd and C. S. Preston, acting as his agent, notified W. L. Hill of the default and the offer of Scott Woodward. Then, as alleged:

"It was thereupon agreed orally by and between the said Richard Lloyd and C. S. Preston acting as his agent and the plaintiff that the said Richard Lloyd should take possession of said premises and farm and rent the same, collect the rents thereon and apply the same to the indebtedness evidenced by the notes of W. L. Hill, payable to said Richard Lloyd. That said notes were not then due, and that only the interest, which was payable annually, was due on said notes for the year 1921, amounting to the sum of $2,400.00."

It is not alleged that Scott Woodward was a party to such agreement or received any benefit or consideration therefor, or that Richard Lloyd agreed to return the posses-

---

sion of the land to Scott Woodward or the plaintiff after applying the rents on the notes. In pursuance of the agreement, Richard Lloyd took possession of the premises and rented the same to tenants for the year 1922, and through his agent collected and received the rents for the year, amounting, as alleged, to the sum of $15,000. On May 22, 1922, Richard Lloyd died, leaving a will naming C. S. Preston as independent executor without bond. C. S. Preston qualified as executor and as such continued in possession of the land, through the tenants, during 1922. After C. S. Preston qualified as executor, but at a date not stated, Scott Woodward deeded the land inferably in rescission as previously offered, "to C. S. Preston as executor of the will of Richard Lloyd." The plaintiff does not allege that the conveyance from Woodward was for his benefit, although it was alleged that the $15,000 in rents collected by C. S. Preston as executor during 1922 "should and of right ought to have been applied as a credit on said notes of W. L. Hill to Richard Lloyd as of date December 31, 1922." It was alleged that the conveyance from Scott Woodward was taken by the executor without plaintiff's knowledge or consent, but it was not alleged that it was taken by agreement or by intention for the use and benefit of the plaintiff, or in trust for him.

Proceeding further, the petition alleges that after C. S. Preston, executor, had collected the rents for 1922, and about January 1, 1923, C. S. Preston as executor and the plaintiff W. L. Hill "agreed" that, in view of a pending suit by Anderson county levee improvement district No. 1 against La Roe and Parker and C. S. Preston, executor, to enforce the levee taxes, "in order to clear the title to said land against the said (tax) lien and to defend against the tax suit, it was necessary that C. S. Preston, executor, bring suit against W. L. Hill on the notes executed by him and payable to said Richard Lloyd, and that he would cause such suit to be brought, and in the meantime he would continue in possession of said premises, collecting the rents and revenues therefrom, and that W. L. Hill would make no defense to the suit and no attempt to get possession of the premises or collect the rents therefrom." Such suit was brought, and judgment was entered against W. L. Hill for the amount of the notes, with foreclosure of the lien and order of sale. It is not alleged that the suit and judgment were intended to be a repudiation of title through the Woodward deed. It is not alleged that the judgment was undertaken or intended to be enforced. The prayer of the petition was as follows:

"Premises considered, plaintiffs pray that the amounts of money so collected by defendant C. S. Preston, executor, as rents and revenues from said premises be ascertained and the amount thereof allowed as a credit upon said judgment, and that it be decreed by this honorable court that plaintiff have the right to pay off the balance remaining, if any, on said judgment after said credits, and that upon payment of the balance so due that he take the title to said land and premises, free from any charge, lien or claim by the said defendants or any of them, and that the cloud be removed from the title to said premises, and that he have a writ of possession and all such other and further relief as the court may find him entitled to in the premises."

A. M. Barton, of Palestine, and J. R. Hill, of Houston, for appellant.

Morris, Sewell & Morris and Cole, Cole & O'Connor, all of Houston, for appellees.

LEVY, J. (after stating the facts as above). [1-3] Considering all the allegations, and giving full intendment and legal effect thereto, it is believed the court correctly sustained the demurrer to the petition. When W. L. Hill conveyed the land to La Roe and Parker and surrendered possession to them, he parted with the right of redemption. Harris v. Masterson, 91 Tex. 171, 41 S. W. 482. He thereafter occupied the position of surety for the payment of the notes to Richard Lloyd. Hill v. Hoeldtke, 104 Tex. 594, 142 S. W. 871, 40 L. R. A. (N. S.) 672. Scott Woodward, the last purchaser, had the equity of redemption coupled with the right of possession until legally disposed of in some way. Lindsey v. Hart (Tex. Com. App.) 276 S. W. 199. Richard Lloyd, as the first vendor, had the right to rescind the trade and repossess the land, the superior title remaining in him, or else to sue W. L. Hill, his original vendee, and La Roe and Parker, the vendees of W. L. Hill, on their assumption of the notes, and to foreclose his lien on the land, making Scott Woodward, the ultimate vendee, but who did not assume the notes, a party to the suit. In this attitude W. L. Hill did not have any legal right of possession or repossession of the land at the time Richard Lloyd through his agent Preston "advised the plaintiff, W. L. Hill," that "Scott Woodward, who then was claiming said land under the conveyance from La Roe and Parker to him, was willing to give up said land and surrender the possession thereof to plaintiff or to the said Richard Lloyd." The offer of Scott Woodward was purely that of rescission of the trade, "to give up said land and surrender the possession thereof" by reconveyance in full extinguishment of the unpaid notes. W. L. Hill did not, as far as alleged, accept the offer of reconveyance, or advance or offer to pay the defaulting interest. On the contrary, as alleged, W. L. Hill "orally agreed" that Richard Lloyd, legally entitled to repossess the land, could "take possession of the land and farm and rent the same and collect the rents and apply the same to the indebtedness evidenced by the notes of said W. L. Hill payable to said Richard Lloyd."

The agreement was without any consideration to support it, and Richard Lloyd's executor would not be estopped from claiming the revenues of the land. W. L. Hill was bound to pay, as a personal obligation, the interest then due and demanded of him, and he parted with no right when Richard Lloyd took possession of the land.

[4, 5] And the petition does not allege that Richard Lloyd agreed, after paying the rent on the notes, to surrender the possession of the land to W. L. Hill or back to Scott Woodward. No arrangement was described or alleged to be agreed to, by intendment or in legal effect, constituting Richard Lloyd like as a mortgagee in possession. The possession of Richard Lloyd was his own, as vendor, and not the possession of Hill or Woodward, and W. L. Hill had no legal or contractual right of possession, even though there had been default in payment of the interest due; and W. L. Hill's agreement that Richard Lloyd could have possession conferred no right in Richard Lloyd. The subsequent taking of the deed from Scott Woodward by the executor of Richard Lloyd invaded no right nor created any equity in W. L. Hill. It was not alleged that such conveyance was by agreement for the use and benefit of W. L. Hill, or that W. L. Hill advanced any consideration therefor. The conveyance operated, in the absence, as here, of any consideration moving from W. L. Hill, to be a rescission of the sale, passing the land back to Richard Lloyd and closing all equity of redemption of Scott Woodward and extinguishing the indebtedness of W. L. to Richard Lloyd. W. L. Hill could not have objected to nor revoked the conveyance. A resulting trust could not be predicated in the allegations. And the filing of the agreed suit did not operate to change the status of the parties, by intendment or in legal effect. The suit was for the purpose merely of clearing the title. There was no renunciation of title by the executor of Richard Lloyd.

The judgment is affirmed.