QUIMBY *v.* WILLIAMS *& a.*
GOULD *v.* WILLIAMS *& a.*
TIBBETTS *v.* WILLIAMS *& a.*

If a mortgagee, after having assigned the mortgage, receives a conveyance of the mortgaged premises from the mortgagor, agreeing to discharge the latter from liability on the note, the subsequent assent of the assignee to such discharge does not estop him from insisting upon the mortgage security as against the mortgagee and his grantees.

An assignment of a recorded mortgage and the note by a mortgagee, after the debt has been paid to him, is not valid as against his subsequent assignment of a second mortgage executed and recorded prior to the first assignment.

If a mortgagor conveys the land to the mortgagee in payment of the mortgage debt, but does not have the mortgage discharged on the record or the note cancelled, and the mortgagee assigns the mortgage to another for value, the latter's title will prevail over that of subsequent grantees of the mortgagee.

The union of the mortgagor's and mortgagee's title in the latter does not necessarily amount to a merger.

An assignment and delivery of a mortgage-note transfers the mortgagee's title under the mortgage.

A conveyance of land to be held by the grantee on a secret trust for the benefit of the grantor is void as against mechanics' liens for labor subsequently performed in erecting a building upon the land under a contract with the grantor.

A grantee of land is not entitled to have a previous conveyance by the grantor set aside, because it was fraudulent as to creditors.

BILLS IN EQUITY, praying in substance for a determination of the rights of the parties as mortgagees in certain parcels of real estate. Facts found by a referee.

In the first case the following facts appear: Abigail Brown executed three mortgages of her farm in Colebrook to the defendant Williams,—one dated December 1, 1883, for $800; one dated March 18, 1884, for $500; and one dated December 18, 1884, for $1,700. The last mortgage was intended by Mrs. Brown and Williams to be in satisfaction and extinguishment of the prior mortgages; but they were left in Williams's possession without being formally cancelled or discharged. January 29, 1886, Mrs. Brown conveyed all her interest in the farm to Williams, and it was then understood by them that all her notes were thereby

paid. March 28, 1886, Williams executed a deed of the farm to John A. Hammond, and took a mortgage back from him for $2,500. The purpose of this transaction was to enable Williams to raise money on the mortgage as collateral security.

About the middle of December, 1883, Williams transferred the $800 mortgage to the defendant Parkhurst. Soon after Mrs. Brown conveyed the farm to Williams, Parkhurst knew that she had conveyed it to him, and that she supposed all the mortgage debts were thereby extinguished. Parkhurst relied upon Williams's promise to pay the note, but supposed the farm would be holden for the payment if Williams failed to satisfy the debt.

September 1, 1885, Williams pledged Mrs. Brown's note and mortgage of December 18, 1884, for $1,700, to the National Bank of Newbury, one of the defendants, as security for loans made to him. Some time in 1886 he assigned to Quimby the Hammond note and mortgage of March 28, 1886; and March 4, 1887, he assigned Mrs. Brown's note and mortgage for $500 to the defendant Lamb. July 28, 1888, he mortgaged the Brown farm to the Bradford Savings Bank, one of the defendants, as part security for the sum of $12,000. All the mortgages are now held by the several parties, for valuable considerations received by Williams, and without the knowledge in fact, at the times they took the mortgages, of the state of the title. The deeds were all duly recorded, and all the notes were indorsed by Williams.

The facts in the second case are as follows: The defendant Norris gave Williams a mortgage on his block in Colebrook, dated November 24, 1884, to secure the payment of three notes of $500 each. Williams pledged these notes to the plaintiff Gould, who now holds them, as collateral security, giving him a certified copy of the mortgage, and retaining the original. Subsequently he pledged three apparently genuine notes of $500 each, in all respects like those delivered to Gould, and the original mortgage, to the Bradford Savings Bank, one of the defendants.

In the third case the following facts are found: May 2, 1885, Williams conveyed to the defendant Hammond a farm called "the stock farm," and took a mortgage back of the same date for $1,000. Soon after, Williams pledged the mortgage and note to the defendant Blodgett to indemnify him for signing a note as surety for Williams, which note Blodgett has paid. March 25, 1886, Hammond reconveyed the farm to Williams, but the deed was not recorded. The purpose of the conveyances between Williams and Hammond was to enable the former to raise money on the latter's note and mortgage, but not to divest Williams of his title. Hammond never entered into possession of the land, and left the deeds with Williams, who caused the first deed and the mortgage to be recorded without the knowledge of Hammond. Hammond knew of and consented to the conveyance to him, and voluntarily executed the mortgage and note, but his conveyance

of the farm to Williams was made with the understanding that Williams should cancel the note and mortgage, which he failed to do. February 4, 1888, Williams executed a deed of the farm to the defendant Sarah A. Tibbetts. At that time she let him have $1,000; but she never took possession of the land, and Williams has paid her the interest on the money advanced, and has paid the taxes on the land. July 28, 1888, Williams also executed a mortgage of the farm to the Bradford Savings Bank, one of the defendants, as part security for a loan to him of $12,000.

There are mechanics' liens on the property in favor of the defendants Woodrow, Rolfe, and H. Hammond, for lumber and materials furnished and labor performed on a building erected by Williams while he was in possession, and soon after his deed to Mrs. Tibbetts.

*Bingham & Bingham*, for the plaintiffs.

*Thomas F. Johnson, Chapman & Lang, Drew & Jordan, James I. Parsons*, and *Jason H. Dudley*, for the defendants.

*Per Curiam.** 1. Mrs. Brown's mortgage to Williams for $800, which was duly recorded, was the first of the several incumbrances placed upon the Brown farm. Its validity at the time of its execution is admitted, and it is not claimed that its assignment a few days later by Williams to Parkhurst was defective or void. The title to the note and mortgage passed to Parkhurst before the $1,700 mortgage was given, and his rights were not affected by the fact that Mrs. Brown and Williams understood that the last mortgage operated as a payment of her former notes to Williams. She might have protected herself by insisting upon a surrender of the old notes and mortgages. Her failure to do so did not release the mortgage in the hands of a *bona fide* holder like Parkhurst. But it is claimed that Parkhurst is estopped to insist upon his mortgage, because, after he learned that Mrs. Brown had conveyed her equity in the farm to Williams, in liquidation, as she supposed, of her notes, he assented to the transaction, and relied upon Williams to pay the $800 note. Whether he released Mrs. Brown from her personal liability on the note it is unnecessary to inquire, for the note was not paid or cancelled; it still represented the debt which the mortgage was given to secure; and the case shows that Parkhurst did not intend to relinquish that security. There are no special equities as against Parkhurst's mortgage in favor of the Bank of Newbury. When they received the $1,700 mortgage, they were chargeable with knowledge from the record that the $800 mortgage was a first lien on the farm; and as it has not been

---

*See foot-note on page 80.

discharged, it remains a first lien. Nor have the parties who acquired mortgages on this land subsequently to the time Mrs. Brown conveyed it to Williams any ground upon which to claim an estoppel against Parkhurst. An examination of the record would have given them the information that the $800 mortgage was apparently a first lien on the land; and if, having this knowledge, they chose to rely upon statements of Williams and Mrs. Brown that it had in fact been discharged, if they were willing to take subsequent mortgages without having the first one discharged on the record, they, and not the innocent holder of the first mortgage, should suffer the consequences of their misplaced confidence. *Wilson* v. *Kimball,* 27 N. H. 300; *Blake* v. *Williams,* 36 N. H. 39; 1 Jones Mort., s. 474.

As the $1,700 mortgage was given in payment of Mrs. Brown's previous notes and mortgages, it must take precedence of the $500 mortgage which had not been assigned and which Williams might have discharged. To hold that to be a valid incumbrance in the hands of Williams against his subsequent assignees and grantees would be to assist him in carrying out his fraudulent and dishonest scheme. He held it as a discharged mortgage, and his subsequent assignees and grantees are entitled to the benefit resulting therefrom. As the National Bank of Newbury received the $1,700 mortgage September 1, 1885, and as Williams did not assign the $500 mortgage until March 4, 1887, the bank holds its security as the second mortgagee.

The next valid incumbrance is the $2,500 mortgage held by Mrs. Quimby, which was pledged to her March 28, 1886. The fact that Williams conveyed the farm to Hammond merely to enable Hammond to mortgage it back to him, and to perpetrate another fraud, did not make the mortgage invalid in the hands of Mrs. Quimby, a *bona fide* holder for value. An examination of the title when she received the mortgage would have disclosed two valid mortgages on the land, the one held by Parkhurst and the $1,700 mortgage.

At the time Williams mortgaged the farm to the Bradford Savings Bank the $500 mortgage had been assigned to Lamb. By investigation the bank would have learned not only that it had not been formally discharged, and that it apparently constituted a lien on the farm, but that it was an outstanding incumbrance in the hands of an assignee for value; and they are chargeable with that knowledge. Lamb had the right, as against a subsequent mortgagee, to rely upon the state of the record title as it appeared when he received his mortgage; and although Williams, his assignor, then held the mortgagor's title, the record disclosed that it was subject to several incumbrances, among which was the $500 mortgage. The fact that it was in Williams's possession did not necessarily show that it was invalid; nor did the fact that while in his hands it was invalid against previous

incumbrances, because equitably it had been paid, prove that it could have no force, when assigned by him, as against his subsequent assignees or grantees. Lamb took the mortgage as a valid and subsisting incumbrance, so far as Williams was concerned; and if, for some purposes, it is regarded in equity as discharged, it would be plainly inequitable and unjust to allow Williams to defend against it upon that ground; and no reason is perceived why the bank, his subsequent grantee, should have the advantage of that defence. There was no merger of titles in Williams. 1 Jones Mort., *s.* 870.

2. Williams's pledge or transfer of the Norris notes to Gould was an equitable assignment of the mortgage given to secure their payment (*Whittemore* v. *Gibbs*, 24 N. H. 484, 487), and the fact that the original mortgage was not delivered to the assignee is immaterial. For the fraud practised upon the bank by Williams, Gould is not responsible, nor is the validity of his security affected thereby.

3. Blodgett has the first lien on the stock farm. His claim is not affected by the fact that Williams's conveyance to Hammond was made for the purpose of taking back a note and mortgage to be used by Williams as collateral security. In that transaction there was nothing that imparts any element of fraud or invalidity to Blodgett's title. In taking the note and mortgage he was justified in relying upon the record title as against Williams, Hammond, and subsequent purchasers.

The defendants, who furnished materials for and performed labor upon the building built by Williams on the premises while the title was apparently held by Mrs. Tibbetts, have a lien thereon if they took the necessary steps to perfect it. P. S., *c.* 141, *s.* 10. Their contract was with Williams; they were his creditors; and his conveyance to Mrs. Tibbetts was a fraudulent one as to them. He remained in the possession of the farm after the conveyance as before, managing it as his own, and paid her the interest on the money advanced by her at the time of the conveyance. He also paid the taxes on the place, and built the building on account of which the liens are claimed. The secret trust for his benefit is manifest. The deed was either without consideration, or it was intended as security for the $1,000 paid by Mrs. Tibbetts. In either event it was void as against the creditors of Williams. *Stratton* v. *Putney*, 63 N. H. 377; *Watkins* v. *Arms*, 64 N. H. 99.

But the Bradford Savings Bank, being a subsequent grantee or purchaser from Williams, is not entitled to the protection afforded creditors by the Statute of Elizabeth against fraudulent conveyances. A conveyance made to defraud the creditors of the grantor is valid against a subsequent purchaser for a valuable consideration, with notice of the first conveyance. *Stevens* v. *Morse*, 47 N. H. 532. As was said in that case, — "The grantor can recover neither the land itself nor its value. This rule has been adopted

with a view to deter from and discourage such fraudulent acts. But the adoption of the doctrine that a purchaser for value, with notice from the fraudulent grantor, can take the land away from the fraudulent grantee, amounts to a nullification of the preceding rule. For this would give back to the grantor, not, indeed, his land, but what is the same thing, its value. . . . Such a doctrine would encourage rather than repress conveyances to defraud creditors, for it diminishes the chance of loss to the debtor." The result is, that Mrs. Tibbetts, under her deed, has a claim to the land superior to that of the bank.

*Case discharged.*

CARPENTER, J., did not sit; the others concurred.