## W. L. HILL v. C. S. PRESTON ET AL.

No. 4942. Decided January 21, 1931.
(34 S. W., 2d Series, 780.)

*J. R. Hill* for plaintiff in error.

Lloyd and Preston were mortgagees in possession. Lindsey v. Hart, 276 S. W., 200; Bassham v. Evans, 216 S. W., 450; Whitehead v. Garrity, 64 Texas, 638; Duty v. Graham, 12 Texas, 427; Soell v. Hadden, 85 Texas, 182; Railway v. Whittaker, 68 Texas, 634.

A mortgagee in possession is bound to apply the revenues from the mortgaged premises to the payment of the mortgage debt. Davis v. Hubbard, 38 Ala., 185; Chambers v. Mauldin, 4 Ala., 477; Bennett v. Butterworth, 12 Howard, 367, 13 L. Ed., 1026; 27 Cyc., 1250, 1835, 1838, 1839; Morgan v. Morgan, 48 N. J. Eq., 399, 22 Atl. 545.

When the revenues from the mortgaged premises were sufficient to satisfy the mortgage debt, the title to the premises passed to the mortgagor, free from lien and the title of the mortgagor became absolute.

Where the holder of vendor's lien notes demands that the maker thereof pay same, and then sues the maker on the notes, obtains personal judgment against the maker, with foreclosure of the vendor's lien, and issues execution and order of sale on the judgment, such acts constitute an election on the part of the holder of the notes to affirm the contract of the sale of the land and operates as a renunciation of title to the land. Mozoch v. Sugg, 240 S. W., 625; Stansberry v. Booghery, 158 S. W., 247; Von Roerder v. Robson,

20 Texas, 754; Gardner v. Griffith, 93 Texas, 267, 35 S. W., 314; Trust Co. v. Beekley, 93 Texas, 267, 54 S. W., 1027; Douglas v. Blunt, 95 Texas, 381; Stratton v. Fire Ins. Co., 187 S. W., 6; Bassham v. Evans, 216 S. W., 450; Wiseman v. Cottingham, 141 S. W., 819; Jirou v. Jirou, 186 S. W., 498; Rice v. Garrett, 194 S. W., 672.

Where the vendor of land takes a conveyance from the sub-vendee of his vendee, and afterwards elects to affirm the sale and pursues his vendee on the notes to personal judgment, foreclosure of the vendor's lien and the issuance of execution and order of sale, the title acquired by the deed from the sub-vendee is merged in the judgment and where the judgment is satisfied the title vests in the vendee. Harris v. Masterson, 91 Texas, 171.

*Morris, Sewell & Morris, N. B. Morris, Jr.,* and *Cole, Cole & O'Connor,* for defendants in error.

Where Richard Lloyd sold to plaintiff, in consideration of $40,000.00, evidenced by 40 vendor lien notes for $1,000.00 each, and where plaintiff in turn sold to Parker and LaRoe for a cash consideration and the assumption of plaintiff's notes to Richard Lloyd, and where Parker and LaRoe in turn sold to Scott Woodward, who bought subject to the Richard Lloyd notes, and while the title is outstanding in Scott Woodward, plaintiff alleges an oral agreement by Richard Lloyd to acquire this title and go into possession and farm the land and account to plaintiff for rents as a credit on plaintiff's notes to Richard Lloyd, such an agreement is within the statute of frauds and unenforceable, in that it contemplates the securing of a reconveyance to Richard Lloyd by Scott Woodward and a subsequent conveyance by Richard Lloyd to the plaintiff on the payment of the plaintiff's notes. No trust was created by such an agreement. Plaintiff was not in possession and was not entitled to possession. In a sale by vendor of property reserving the vendor's lien, vendee is entitled to possession until foreclosure; and plaintiff having parted with his title to Parker and LaRoe, who in turn had parted with it to Scott Woodward, plaintiff had neither possession nor the right of possession. The equity of redemption was in Scott Woodward. There was no consideration for the agreement alleged by plaintiff. Plaintiff claimed no defenses to the notes and he would part with no right in permitting Richard Lloyd to go into possession and he would assume no burden in permitting Richard Lloyd to take care of the property and pay plaintiff's debt. Wade v. Cohen, 173 S. W., 1168; Thorp et al. v. Gordon, 43 S. W., 323;

Workman v. Ray, 180 S. W., 291, 293; Newsom v. Minton, 250 S. W., 768; Friedsam v. Rose, 271 S. W., 417; Downing v. Brennan, 232 Mass., 525, 122 N. E., 729.

It will be observed that plaintiff himself sold the property to Parker and LaRoe, who assumed plaintiff's debt to Richard Lloyd on the vendor lien notes. The effect of this, of course, was to make Parker and LaRoe the principal debtors to Richard Lloyd and reduce the status of plaintiff to that of a surety for payment of the debt. (Hill v. Hoeldtke, 104 Texas, 594, 142 S. W., 871, 40 L. R. A., (N. S.) 672.)

Parker and LaRoe themselves sold to Scott Woodward, and the right of possession had passed from plaintiff and his vendees, Parker and LaRoe, to Scott Woodward: Mason v. Bender, 97 S. W., 715; Lindsey v. Hart, 276 S. W., (Com. App.) 199.

The vendor, Richard Lloyd, was entitled, of course, either to rescind or to foreclose his vendor lien. Heirs of Roberts v. Lovejoy, 60 Texas, 255; Summerhill v. Hanner, 72 Texas, 227; Hamblen v. Folts, 70 Texas, 137; Cattle Co. v. Boon, 73 Texas, 54.

Hill was not in possession and had parted with his equity of redemption (Harris v. Masterson, 91 Texas, 17; 41 S. W., 482), and, as shown above, occupied the position of surety for the payment of the notes. In this attitude, the oral agreement alleged by Hill is violative of the statute of frauds. The equity of redemption was in Scott Woodward and the agreement alleged by Hill would require the securing of a reconveyance from Scott Woodward to Richard Lloyd. Defendants had voluntarily "released plaintiff and the lands involved from the judgment of foreclosure and had declared the judgment satisfied and that they would not further prosecute any right or title under the same, or claim anything against plaintiff or the premises in controversy by virtue thereof." Any possibility of injury to plaintiff from the judgment of foreclosure against him is hereby eliminated and brings the case in that regard on a par with the Foster v. Ross case, in which case Burnett bought in the land for $500.00, instead of the face of his judgment, and as to which Judge Gill remarked: "It will be observed from plaintiff's petition that he alleges that Scott Woodward conveyed the land back to C. S. Preston as executor of the will of Richard Lloyd. Unless equity would keep the indebtedness against plaintiff alive, for the protection of plaintiff's vendor, this would appear clearly to result in a merger of the vendor's lien and the equity of redemption in plaintiff. 41 C. J., p. 775, Sec. 869." The plaintiff's allegations, therefore,

would ordinarily show a merger to the release and extinguishment of his indebtedness to Richard Lloyd, and appearing thus on the face of the petition would be an additional ground for sustaining the general demurrer. See Ellis v. Scarborough, 279 S. W., 859, affirmed by Commission of Appeals, 289 S. W., 1002, and which case follows Harris v. Masterson, and holds a merger occurs on the vendor re-acquiring the equity of redemption unless prevented for the benefit of the vendor.

## ON MOTION FOR REHEARING.

It may be said that on the default of Hill, LaRoe and Parker and Scott Woodward to pay the interest on their debt to Lloyd, that if they were without equities, Lloyd had the right, without notice to them, and if with equities, after notice to sell the land to another party and convey the superior title: Kennedy v. Embry, 72 Texas, 387, 10 S. W., 88; Lipscomb v. Fuqua, 103 Texas, 585, 131 S. W. 1061; Thompson v. Westbrook, 56 Texas, 225; Morrison v. Barry, 30 S. W., 376 (writ refused).

On the other hand where a vendor elects to sue for the debt and the establishment of his lien, he thereby loses his right to sue for the land and his only remedy is to foreclose his lien—the superior title passing out of him to his vendee: Von Roeder v. Robson, 20 Texas, 754; Roberts v. Lovejoy, 25 Texas Sup., 437, 28 Texas, 641; Bartley v. Harris, 70 Texas, 181, 7 S. W., 797; Gunst v. Pelham, 74 Texas, 586, 12 S. W., 233; Pierce v. Moreman, 84 Texas, 596, 20 S. W., 821; Gardner v. Griffiths, 93 Texas, 355, 55 S. W., 314; Mozoch v. Sugg, 254 S. W., (Com. App.) 770; Wiseman v. Cottingham (Civ. App.), 141 S. W., 817; Moon v. Sherwood (Civ. App.), 180 S. W., 296.

When Judge Hill sold to LaRoe and Parker, who assumed the debt to Judge Hill, LaRoe and Parker became the principal obligors and Judge Hill became only their surety: Spann v. Cochran & Ewing, 63 Texas, 240; Hill v. Hoeldtke, 104 Texas, 594, 142 S. W., 871; Brannin v. Richardson, 108 Texas, 112, 185 S. W. 562; Allen v. Traylor, 212 S. W., (Com. App.) 945; Carraway v. Fowler, 267 S. W., (Com. App.) 672; Clemmens v. McDowell, 5 S. W., (2d) 224, affirmed 12 S. W., ( Com. App.) 955; Snyder v. Slaughter, 208 S. W., 974; Strickland v. Higginbotham, 220 S. W., 433; Pickett v. Jackson, 42 S. W., 568; Clayton v. Watkins, 47 S. W., 810; Smith v. Farmers' Loan & Trust Co., 51 S. W., 515; Fox v. Robbins, 70 S. W., 597.

After the sale of the land by Hill to Parker and LaRoe, Hill had no further interest in the land other than to require in event Lloyd sought to hold Hill personally on the notes, that the land be sold first as a primary fund and exhausted before any such personal recourse could be had against him: Harris v. Masterson, 91 Texas, 171, 41 S. W., 482; Ellis v. Scarborough, 289 S. W., (Com. App.) 1002, affirming 279 S. W., 859; Farmers & Merchants State Bank v. Cameron, 203 S. W. (El Paso) 1167; affirmed 231 S. W., (Com. App.) 738; Newby v. Harbison, 185 S. W., (Amarillo) 642; Doolen v. Hulsey, 192 S. W., (Amarillo) 364; Campbell v. Jones, 230 S. W., (El Paso) 710; Note 46 A. L. R., 322.

As such surety Judge Hill would have no cause of action against LaRoe and Parker and would not be entitled to sue them as his principals until he had paid off the notes to Richard Lloyd: 50 C. J. Sec. 408, p. 250; Ennis v. Cocke, 2 Texas, 592.

And a court of equity would not interfere on Judge Hill's behalf as surety to compel his principals, LaRoe and Parker, to pay the debt before it had been ascertained that the land, primarily liable, was insufficient to discharge it: 50 C. J. 244, Sec. 396, Note 35, p. 245; Slawson v. Watkins, 86 N. Y., 597.

All this is in analogy to the fact that one's surety cannot maintain a cause of action for contribution against a co-surety until such surety has paid the creditor more than his share of the debt: 50 C. J. 294, Sec. 491; Jackson v. Murray, 77 Texas, 644, 14 S. W., 235; Langley v. Godwin, 264 S. W., 323, affirmed on other grounds, 276 S. W., (Com. App.) 659.

This surety relationship is not changed by the fact that Hill in his deed to LaRoe and Parker reserved a vendor's lien to secure him against his liability on the notes which he had executed to Lloyd: Harris v. Masterson, 91 Texas, 171, 41 S. W., 842; Strickland v. Higginbotham Bros. & Co., 220 S. W., 433.

The rights of a subsequent vendee are protected against contracts between the original vendor and his immediate vendee: Huffman v. Mulkey, 78 Texas, 556, 14 S. W., 1029, 22 Am. St., 71; Bonner v. Mem. Home Bank, 122 S. W., 430; Levy v. Persons, 131 S. W., 446; McDonald v. Miller, 90 Texas, 309, 39 S. W., 89.

When the legal title went out of Lloyd by his suit to foreclose, it went through Hill and LaRoe and Parker into Scott Woodward, and was not subject to divestiture by oral agreement. Sanborn v. Murphy, 86 Texas, 43, 25 S. W., 610; Dial v. Crain, 10 Texas, 444; McDonald v. Whaley, 244 S. W., (Com. App.) 596.

It is a *non-sequitur* as held by this court that under the facts based on Woodward's abandonment and LaRoe and Parker's inability to pay the rents, that "under this state of facts Hill, as vendee of Lloyd, had the right of possession without accounting to Lloyd for the rent." Mozoch v. Sugg, *supra*.

Lloyd clearly had the right on reacquiring the equity of redemption from Scott Woodward, to elect either a merger or not as he saw proper. If he elected a merger, all adverse claims against the mortgaged premises (except, of course, any intervening liens held by third parties) are extinguished. If he elected to treat the outstanding obligation as evidenced by Hill's vendor lien notes as in existence, then he had a right to hold Hill and LaRoe and Parker personally, but when he did so, Hill and LaRoe and Parker had the correlative right (and that only) to require the land to be sold as a primary fund before recourse could be had against them personally. Neither Hill nor LaRoe and Parker would be entitled to any excess which the premises might bring, as that would go to Lloyd as the holder of Scott Woodward's equity of redemption. This Court will find Harris v. Masterson followed and approved by the following authorities:

Ellis v. Scarborough, 289 S. W., (Com. App.) 1002, affirming, 279 S. W., 859; Newby v. Harbison, 185 S. W., (Amarillo) 642; Dooley v. Hulsey; 192 S. W., (Amarillo) 364; Farmers & Merchants State Bank v. Cameron, 231 S. W., (Com. App.) 738; Campbell v. Jones, 230 S. W., (El Paso) 710, 718.

If Hill was to obtain any additional rights to that right which he possessed as a surety for LaRoe and Parker, he must obtain the same in some legal manner, and since the subject matter of the contract is real estate, it would have to be in writing and obviously would have to be for a valid consideration. Foster v. Ross, 77 S. W., 990 (writ of error refused) ; Wade v. Cohen, 173 S. W., 1168; Thorp v. Gordon, 43 S. W., 323; Workman v. Ray, 180 S. W., 291, 293; Newsom v. Minton, 250 S. W., 768; Friedsam v. Rose, 271 S. W., 417; Oviett (Northwestern Fire & Marine Ins. Co. et al.) v. Warner, 288 S. W., (Com. App.) 434; Davis v. Holloway, 295 S. W., (Mo. Sup.) 105; Seward v. N. Y. Life Ins. Co., 152 S. E., (Va. Sup.) 346; Downing v. Brennan, 232 Mass., 525, 122 N. E., 729; Shriner v. Craft, 166 Ala., 146, 51 So., 884, 139 A. L. R., 918; 13 C. J., Sec. 209, p. 352 *et seq.*

Mr. Commissioner SHARP delivered the opinion of the Court.

W. L. Hill instituted this suit in the district court of Anderson County against C. S. Preston, individually, C. S. Preston as executor of the estate of Richard Lloyd, deceased, Mrs. Dora L. Preston, wife of C. S. Preston, and Mrs. Cora Neff and husband, Theo. L. Neff, alleging in substance that on the 18th day of December, 1917, W. L. Hill purchased from Richard Lloyd 1655 acres of land and in payment therefor executed forty notes, each for the sum of $1,000, dated December 19, 1917, and due on or before ten years after date and bearing interest at the rate of 6% payable annually. A vendor's lien was retained against the land to secure the payment of the notes and as additional security for the payment of the $40,000 Hill gave Lloyd a deed of trust on 1944.7 acres of land in addition to that covered by the vendor's lien notes. This tract of land is referred to as the Hill tract; the other tract as the Lloyd tract. Hill sold the land to La Rue and Parker, who assumed payment of the notes to Lloyd, and Hill retained a vendor's lien to secure the payment of their obligations. La Rue and Parker sold to Woodward. Woodward defaulted in the payment of the interest for the year 1921, amounting to $2400. The principal was not due until 1927. Lloyd thereupon demanded of Hill that he pay the interest. When Woodward defaulted in the payment of the interest he offered to surrender the possession of the land and to release it to Hill or Lloyd. He did or was ready to abandon possession. It was thereupon arranged by and between Hill and Lloyd that Lloyd and Preston, who was the son-in-law and subsequent executor of his estate, should take possession of the two tracts of land and rent them and apply the rents to the payment of the debt. Preston accordingly rented the premises and collected from the rents $15,000 for the year 1921, $18,000 for the year 1923 and $16,000 for 1924; that the rental value of the land is $15,000 per annum. The market value of the Lloyd land is $150,000.

In January, 1923, Preston as Lloyd's executor filed suit against Hill on the notes and secured a personal judgment against Hill for the amount of the notes, principal, interest and attorney's fees, amounting to approximately $55,000, with a foreclosure of the deed of trust lien on the Hill tract and a foreclosure of the vendor's lien on the Lloyd tract.

In January, 1925, Preston demanded that Hill pay this judgment. Hill demanded that Preston credit the judgment with money

collected from the rent of the land and offered to pay any balance that might be owing on the judgment. Preston refused to do this, and then for the first time told Hill that Woodward had conveyed the Lloyd land to Preston and that it was his, Preston's land, and that Hill was not entitled to the rents. The Hill tract was not conveyed to Preston and the title to that tract is not in issue in this case.

Preston then caused an execution to issue against Hill with an order of sale of the land. No accounting has ever been made to Hill of the rents from the Hill tract. Hill secured an injunction restraining the execution of the judgment against him and the order of sale against the land and thereafter filed this suit. Defendants then filed an answer in the injunction suit declaring the judgment satisfied.

That Hill in his answer in the injunction suit offered to pay whatever amount was due on the vendor's lien notes executed by him to Lloyd. That in this suit Hill alleges that if said credits so claimed by him derived from the rents and revenues of said land in the possession of Lloyd and his successor, Preston, are not sufficient to satisfy said indebtedness, that he, the said Hill, offers to pay whatever amount remains due on said judgment after said credits have been made.

That at the time of the issuance of the execution of the order of sale in January, 1925, Preston had collected $49,000 from the rent of the two tracts of land. At the date of the judgment the amount collected from the rent for 1925 had not been ascertained. Plaintiff alleged on information and belief that it was approximately $20,000. Hill offered to pay any balance the court might find to be owing on the judgment and prayed for a judgment for the land. The rental value of the two tracts of land is $15,000 per annum. The value of the Lloyd land is $150,000. It is not shown how much money was collected from the Hill tract. Plaintiff stated in his petition that he did not know as to this and prayed that Preston be required to make an accounting. This was not done.

The trial court sustained a general demurrer to plaintiff's original and supplemental petitions. Thereupon an appeal was made by plaintiff to the Court of Civil·Appeals at Texarkana and that court affirmed the judgment of the trial court. 296 S. W., 925. Hill applied for a writ of error, which was granted by the Supreme Court.

The parties hereto will be designated as they were in the trial court.

Plaintiff submits the following propositions:

1. Lloyd and Preston were mortgagees in possession.

2. A mortgagee in possession is bound to apply the revenues from the mortgaged premises to the payment of the mortgage debt.

3. When the revenues from the mortgaged premises were sufficient to satisfy the mortgage debt, the title to the premises passed to the mortgagor, free from lien and the title of the mortgagor became absolute.

4. Where the holder of vendor's lien notes demands that the maker thereof pay same, and then sues the maker on the notes, obtains personal judgment against the maker with foreclosure of the vendor's lien, and issues execution and order of sale on the judgment, such acts constitute an election on the part of the holder of the notes to affirm the contract of the sale of the land and operates as a renunciation of title to the land.

5. Where the vendor of land takes a conveyance from the sub-vendee of his vendee, and afterwards elects to affirm the sale and pursues his vendee on the notes to personal judgment, foreclosure of the vendor's lien and the issuance of execution and order of sale, the title acquired by the deed from the sub-vendee is merged in the judgment and where the judgment is satisfied the title vests in the vendee.

Defendants contend that the action of the trial court in sustaining a general demurrer to plaintiff's cause of action was correct and the action of the court should be sustained upon the following contentions:

"It is contended by defendants that the oral agreement, alleged by plaintiff is void and unenforcible, for the following reasons:

"1. It was not in writing, and, therefore, invalid under the statute of frauds;

"2. It did not create a trust. Mr. Hill was neither in possession nor entitled to possession at the time of the alleged agreement and

"3. There was no consideration for the agreement."

In reply to the contentions urged by the defendants, plaintiff submits the following propositions:

(a) That Lloyd being the vendor and Preston his executor, being the holder of the vendor's lien notes executed in payment for the premises in controversy, having elected to sue Hill on the notes and by obtaining judgment thereon and by seeking to enforce said

judgment personally against Hill thereby electing to pursue Hill on the debt, could not claim title to the land, even though Woodward had conveyed the land to Preston; and Hill having offered to pay whatever balance might have been found by the court to be due on the purchase money, had a right to recover the premises in controversy, even though there had been no consideration for the agreement that Preston should hold the possession of the land and rent it and apply the rents to the payment of the debt.

(b) And even though the court might hold that the conveyance to Preston, after he had promised to hold possession and apply the rents thereof to the payment of Hill's debt, did not create a trust for Hill's benefit, yet, when the defendants elected to pursue Hill on the debt they lost the right to claim the land and Hill having offered to pay the debt had a right to recover the land.

(c) That no consideration was necessary to support the agreement to apply the rent money to the debt.

(d) That there was a valid consideration for said agreement.

The allegations made by plaintiff are in substance that Hill bought the land from Lloyd and gave his notes therefor secured by a vendor's lien on the premises and as additional security therefor, executed a deed of trust on 1967 acres of land; that Woodward, Hill's sub-vendee, defaulted in the payment of the interest on the notes and offered to give up the premises and did surrender possession thereof in December, 1921; that Lloyd demanded that Hill pay the interest on the notes; that he did not surrender the notes to Hill or agree to release Hill from the payment of the notes. That Lloyd then agreed to take possession of the land and rent it and apply the rents to the payment of the debt. That Lloyd did enter into possession of the premises under such agreement in December, 1921, and that Preston, his successor and executor, collected from the rent on the premises during the year 1922 the sum of $15,000 and then on December 7, 1922, procured a deed from Woodward to the premises. That thereafter in January, 1923, Preston as Lloyd's executor, sued Hill on the notes and obtained a judgment therefor with the foreclosure of the vendor's lien and the deed of trust lien.

That Preston remained in possession of the premises until January, 1925, when he demanded of Hill that he pay the judgment; that during the time, Preston had collected from the rent of the premises the sum of $49,000; that when he demanded that the money collected from the rented premises be applied to the judg-

ment and offered to pay any balance that might remain unpaid, Preston refused to do this and had execution issue against Hill for the amount of the judgment with an order of sale on the premises. That he was proceeding to sell the land under such order of sale when restrained by an injunction from the District Court of Anderson County sued out at Hill's instance. That Preston then by an answer filed in the injunction suit declared the judgment satisfied and refused to give up the premises to Hill and thereupon Hill brought this suit.

The rule is well settled in this state that in sustaining a general demurrer every reasonable intendment will be in favor of the sufficiency of the pleading. In passing upon the petition as tested by the general demurrer, the court should consider everything as properly alleged which by reasonable construction is embraced within the allegations contained in the petition. If the petition does not contain sufficiently specific allegations with reference to any issue, the objection thereto may be made by means of a special exception.

It is contended that Lloyd having demanded that Hill pay the debt and having taken possession of the land under the agreement to apply the rents to the payment of the debt, under that agreement Preston was bound to comply with the contract. At the date he made the agreement Woodward had not conveyed the land to Preston and the only right, title or interest that Lloyd had in and to the land was a lien holder. He was permitted by Hill to take possession of the property under the agreement to apply the rents to the payment of the debt and having agreed to do so, he was bound to comply with his contract and said contract made him by virtue of the terms thereof a mortgagee in possession.

The rule is well established in this state if the vendor brings a suit to foreclose the lien or has elected to affirm his contract and to rely upon his debt and lien, such a vendor after suit stands in the position of a mortgagee. Gardener v. Griffiths, 93 Texas, 355, 55 S. W., 314; Mazoch v. Sugg, 254 S. W., (Com. App.) 770; Bassham v. Evans (Civ. App.) 216 S. W., 446.

Judge Gaines, in the case of Gardener v. Griffiths, supra, says:

"We are also of opinion that when, as in this case, a deed has been made which of itself would convey the legal title, and where a mortgage has been taken at the same time to secure the payment of the purchase money, and when the grantor has finally lost the right to claim a rescission of the contract, the legal title vests in the grantee."

Defendants had a choice of remedies. They could abandon the contract and recover the land or affirm the contract and have judgment for their debt and a foreclosure of the lien. They elected to affirm the contract and have judgment for the debt and a foreclosure of the lien. Having elected to sue for the debt and the establishment of the lien and having reduced the same to judgment, they lost their right to sue for and recover the land. Von Roeder v. Robson, 20 Texas, 754; Roberts' Heirs v. Lovejoy, 60 Texas, 253; Bartley v. Harris, 70 Texas, 181, 7 S. W., 797; Gunst v. Pelham, 74 Texas, 586, 12 S. W., 233; Pierce v. Moreman, 84 Texas, 596, 20 S. W., 821; Gardener v. Griffiths, 93 Texas, 355, 55 S. W., 314; Mozoch v. Sugg, 254 S. W. (Com. App.) 770; Wiseman v. Cottingham (Civ. App.) 141 S. W., 817; Moon v. Sherwood, (Civ. App.) 180 S. W., 296.

This record shows that when Hill conveyed the land to LaRue and Parker, he retained a vendor's lien on the premises; when LaRue and Parker conveyed the land to Woodward, they did not retain a lien on the premises, and Woodward did not agree to assume the debt made by Hill. He merely bought subject to the debt; that LaRue and Parker failed to pay the debt assumed by them and were unable to pay it; that Woodward refused to pay the debt and abandoned the possession of the land and offered to reconvey the premises to Hill, and taking into consideration all the facts alleged by plaintiff, Hill stood in the same position as to the debt and as to the lands as he did when Lloyd first conveyed them to him and the equity of redemption reverted to Hill.

It must be kept in mind that in the injunction suit Hill offered to pay the amount due by him on the notes and in this suit he again offers to pay whatever amount the court finds that he justly owes. Preston, et al., having elected to affirm the contract and foreclose the lien are not in position to recover the land. Hill is entitled to the title of the land if he pays the purchase money therefor. McPherson v. Johnson, 69 Texas, 484; Summerhill v. Hanner, 72 Texas, 224; Coddington v. Wells, 59 Texas, 49.

In McPherson v. Johnson, supra, the court say:

"But we take this to be the rule: If, after such default as justifies the vendor in rescinding the sale, he proceeds for the price, he loses his right of rescission; provided, the vendee avail himself of his privilege to pay the debt. But the contract still remains executory, and the latter can not, by pleading limitation, defeat the action for the debt, and still claim the land under a contract with which he has refused to comply."

In the case of Stafford v. Stafford, 96 Texas, 106, Judge Brown, in rendering the opinion of the court, says:

"It is not necessary for us to determine whether the facts constitute a mortgage or a trust, because if it be a mortgage, the title was in B. F. Stafford, and upon that he could maintain this action. If it were held that the transaction constituted a trust in R. E. Stafford, then B. F. Stafford was the beneficiary of that trust and held the equitable title to the land which upon the tender of the sum due became absolute, and he could institute this action to recover the land without previous suit to declare the existence of the trust. Esterling v. Blythe, 7 Texas, 210, 56 Am. Dec., 45; Miller v. Alexander, 8 Texas, 36; Secrest v. Jones, 21 Texas, 121; Martin v. Parker, 26 Texas, 253; Gibbons v. Bell, 45 Texas, 423; Burdett v. Haley, 51 Texas, 540.

"In Secrest v. Jones, the vendor had given a bond for title to the land in question and the purchase money had been paid. The vendor refused to convey the land and the vendee brought an action of trespass to try title, and it was held that upon the payment of the purchase money the title became absolute in the vendee. There can be no question that the equitable title to this land was in B. F. Stafford under the allegation of his petition, and he could maintain such action for the recovery of the land as might have been maintained if he had the complete legal and equitable title. The fact that he set out the facts which constituted his cause of action does not change the character of the suit; it is as much an action for the recovery of real estate as if it had been in the form of trespass to try title.

Under this state of facts when Hill and Lloyd made the contract, as above alleged, Lloyd held the title as trustee for Hill. Preston as the successor of Lloyd and the executor of his estate having brought suit on the notes, elected to affirm the contract and to rely upon the debt and lien. Hill then was entitled to the rents until the order of sale issued on the judgment rendered in favor of Preston against Hill is executed and the land is sold. Preston would have no right of possession unless he became the purchaser.

This rule is sustained in the case of Lindsey v. Hart, et al., 276 S. W., (Com. App.) 199, where it is said:

"Until the order of sale is executed there is no right of possession in the plaintiff, and only then if he becomes the purchaser. Stephens v. Motl, 82 Texas, 81, 18 S. W., 99; Willis v. Sommerville, 3 Texas, Civ. App., 509, 22 S. W., 781; Burson v. Blackley,

67 Texas, 5, 2 S. W., 668; Gulf Pipe Line Co. v. Lasater (Tex. Civ. App.) 193 S. W., 773, at page 782."

By accepting the possession of the land under the contract between Lloyd and Hill, that Lloyd would take the land and rent it and apply the rents to the payment of the vendor's lien notes executed by Hill, we think, by reason of these facts, that Lloyd was placed in the position of a mortgagee in possession. Tom v. Wollhoefer, 61 Texas, 277.

If Hill held the equity of redemption and was entitled to the possession of the land after Woodward had abandoned it, then he was entitled to receive the rents and revenue derived therefrom. This rule is well established by numerous authorities. Whitehead v. Fisher, 64 Texas, 638; Lindsey v. Hart, (Com. App.) 276 S. W., 200; Willis v. Moore, 59 Texas, 629, 46 Am. Rep. 284; Loving v. Milliken, 59 Texas, 427; Edrington v. Newland, 57 Texas, 633; Silliman v. Gammage, 55 Texas, 369; Sanger Bros. v. Hunsucker, 212 S. W., 514.

It is further contended that when Woodward refused to pay and abandoned the possession of the premises, he lost his equity and that it reverted to Hill. It is shown that Woodward had not agreed to pay anything. He had simply bought subject to the lien; that Hill had reserved a lien on his deed to LaRue and Parker and had a lien upon the premises to secure him against their default. The effect of this was to preserve Hill's rights intact and give him the right, if either LaRue and Parker or their vendees defaulted and abandoned the property, to take possession of the premises and to carry out his contract of purchase with Lloyd.

In 39 Cyc., 1353, the following rule is announced:

1. "The rights of either party under a contract of sale may be lost by abandonment and become extinguished thereby. The abandonment may be by parol. A relinquishment in writing is not necessary. Nevertheless the acts constituting such abandonment must be positive, unequivocal, and inconsistent with the continuance of the contract.

2. "Conduct on the part of the purchaser which is not inconsistent with the continuance of the contract in full force and effect does not amount to an abandonment. Abandonment by the purchaser is shown, however, where he positively and absolutely refuses to perform the conditions of the contract, or where he abandons possession and makes no claim until a number of years later when the property has risen greatly in value.

As already shown, the record discloses that Lloyd sold Hill certain land and Hill executed vendor's lien notes therefor; that Hill conveyed the land to LaRue and Parker and retained a vendor's lien against the land to secure him against the indebtedness that he had made to Lloyd; that LaRue and Parker conveyed the land to Woodward subject to the indebtedness made by Hill to Lloyd; that Woodward refused to pay the debt held by Lloyd and abandoned the premises; that LaRue and Parker were unable to pay the debt; that Preston, the successor of Lloyd and the executor of his estate, demanded of Hill the payment of the notes and thereafter filed suit on the notes and took judgment against Hill individually for the principal, interest and attorney's fees stipulated in said notes and foreclosed the vendor's lien against the land; that an order of sale was issued upon the judgment; that prior to the time Preston filed the suit against Hill for judgment on his notes and foreclosure on his vendor's lien, Lloyd entered into an agreement with Hill to take possession of the land from Woodward and apply the rents derived therefrom to the payment of the indebtedness due by Hill, and by subsequent acts, Preston plainly indicated that he had elected to affirm the contract and sue for his debt.

The rule seems to be established that if a purchaser of the equity of redemption has not assumed the mortgage, the primary obligation still resting on the mortgagor, the purchaser may discharge the debt and he thereby becomes subrogated to the rights of the mortgagee. 27 Cyc., 1332.

Applying the principles announced in the foregoing rules to the facts alleged in plaintiff's petition, the payment of the primary obligation rested upon Hill with the corresponding right to discharge the debt and become subrogated to the rights of the mortgagee.

There was no contract of any kind between Woodward and Lloyd and none between Hill and Woodward. Woodward quit. He refused to pay the interest. He abandoned or was ready to abandon the premises. LaRue and Parker did not pay the interest or the principal. They had defaulted and were unable to pay. With Woodward refusing to pay the interest and ready to abandon the premises; with LaRue and Parker being unable to pay the interest or pay the notes,—which one under the facts alleged had the right of possession? Under the facts alleged Lloyd was not the owner but merely held a lien against the land. He demanded of Hill to pay the notes and then agreed with Hill on his method of payment, which was that Lloyd should have possession of the land

with the right to apply the rents to the payment of the debt. Under this state of facts, Hill, as vendee of Lloyd, had the right of possession without accounting to Lloyd for the rent. Whitehead v. Fisher, supra.

It is contended that Hill having conveyed the land to LaRue and Parker and they in turn to Woodward, and when Woodward conveyed the land back to Lloyd, that it clearly resulted in the merger of the vendor's lien and the equity of redemption in Lloyd.

It is alleged that Lloyd and Preston entered the possession of the land as Hill's agents and were bound to apply the rents to the payment of Hill's debts to Lloyd, as he agreed to do, and the making of the secret agreement with Woodward to buy the land without Hill's knowledge or consent, cannot alter Preston's status as agent and trustee; that Woodward offered to deed the land to Hill and Hill could and would have taken the deed to himself but for the fact that Lloyd agreed to hold the land for him; that Preston's action in procuring the deed to himself and withholding it from record and concealing the knowledge from Hill, was done in an attempt to force Hill to pay the amount of the judgment and to hold title to the land also; that Preston's possession was Hill's possession.

This record discloses that Lloyd entered possession of the premises under the agreement in December, 1921; that on December 7, 1922, he procured a deed from Woodward to the land; that thereafter in January, 1923, Preston as Lloyd's executor sued Hill on the notes and obtained a judgment therefor with a foreclosure of the vendor's lien and the deed of trust lien. It is further alleged that from the time Preston and Lloyd took possession of the land, up to and including 1925, they had collected rents from said land in approximately the sum of $49,000.

As a further evidence that Preston, acting for the Lloyd estate, did not elect as his remedy to rescind his contract that Lloyd had made with Hill and recover possession of the land, it is shown that Preston, et al., in a suit in the District Court of Anderson County claimed that they held and owned the forty vendor's lien notes described herein which had been executed by W. L. Hill as part of the purchase money, and urged in that suit that being the legal owners and holders of the vendor's lien notes, above described, that their notes were superior to the taxes levied by the taxing authorities of Anderson County Levee Improvement District No. 2. Having lost their suit in the district court, they appealed to the Court of Civil Appeals at Texarkana, urging the fact that they were the

owners and holders of said notes in that court, and on May 1, 1924, that court rendered an opinion in that case which is found in the case of Preston v. Anderson County Levee Improvement District No. 2, 261 S. W., 1077. They applied for writ of error to the Supreme Court, setting up the same grounds, and on November 12, 1924, after they claim they had received the deed from Woodward, the Supreme Court denied the writ of error. That thereafter, in 1925, long after they claim that they had acquired the equity of redemption from Woodward, they had an order of sale issue on the judgment rendered against Hill in the District Court of Anderson County, and undertook to enforce the payment through an order of sale issued thereunder. Hill alleged that on account of their promises with reference to the law suit against him, he did not contest the amount due thereon, but when they had violated their agreement with him, he obtained a writ of injunction enjoining them from undertaking to compel him to pay the full face of the judgment; that under the facts shown Preston and Lloyd took possession of the premises under a contract with Hill, as alleged by him, and having acquired without his knowledge or consent a deed from Woodward and afterwards undertook to foreclose their vendor's lien notes against the land and hold him personally responsible therefor, they are not now in position to claim that they acquired the equity of redemption from Woodward and hold the title as against Hill and thereby foreclose any rights that he had by reason of being the original maker of the notes and the purchaser of the land from Lloyd.

It is further alleged that when plaintiff discovered that Preston had procured a deed to said premises from Woodward, Preston stated to plaintiff that he had bought said land for himself individually and not as agent of Lloyd and that hence plaintiff was not entitled to have the rents and revenues collected by Preston from the land applied to the satisfaction of the notes and judgment. It is further shown that while the lease and option agreement were made in the name of Preston, nevertheless they were taken for the benefit of the Lloyd estate; that while the deed from Woodward conveyed unto Preston the land, it was taken and accepted for the benefit of the Lloyd estate.

Pomeroy in his Equity Jurisprudence announces the following well established rules:

"Where the legal estate—for example, the fee—and an equal coextensive equitable estate unite in the same person, the merger

takes place in equity, in the absence of acts showing an intention to prevent it, as certainly and as directly as at the law. Under these circumstances, merger is prima facie the equitable as well as legal rule. If, however, the holder of an equitable estate obtains the legal fee, and procures it to be conveyed to a trustee with an express declaration that there shall be no merger, then it seems that a court of equity will not permit a merger in opposition to such a direct intention. Where the owner of a legal estate—as, for example, the fee—acquires by purchase or in any other manner a lesser equitable estate not coextensive and commensurate with his legal estate, or a lesser legal estate, a distinction exists; the merger, although taking place at law, does not necessarily take place in equity; indeed, it may be said that the leaning of equity is then against any merger, and that, prima facie, it does not result. The settled rule of equity is that the intention of the one acquiring the two interests then controls." 2 Pomeroy, sec. 788.

"Where a mortgagee takes a conveyance of the land from the mortgagor, or from a grantee of the mortgagor, if the transaction is fair, the presumption of an intention to keep the security alive is very strong. It is generally for the interests of the party in this position that the mortgage should not merge, but should be preserved to retain a priority over other incumbrances. As the mortgagee acquiring the land is not the debtor party bound to pay off either the mortgage or the other incumbrances on the land, there is nothing to prevent equity from carrying out his presumed intent, by decreeing against a merger." 2 Pomeroy, sec. 793.

"Whenever the legal title to property, real or personal, has been obtained through actual fraud, misrepresentation, concealments, or through undue influence, duress, taking advantage of one's weakness or necessities, or through any other similar circumstances which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never perhaps have had any legal estate therein." Pomeroy's Equity, Section 1053.

In a well considered opinion, after reviewing the rules announced by Pomeroy in the case of York v. Robbins, (Com. App.) 255 S. W., 720, it is said:

"While it is the general rule that, when the title to the land and the mortgage debt become vested in the same person, the mortgage

is merged in the title, and becomes extinguished, yet the mortgage may be kept alive for the protection of the purchaser of the title, and there will be no merger contrary to the intention of the parties. 15 Am. & Eng. Enc. Law, p. 319, et seq., citing Pike v. Gleason, 60 Iowa, 150, 14 N. W., 210, and other authorities." Hapgood Shoe Co. v. First Nat. Bank of Crockett, 23 Texas Civ. App., 506, 56 S. W., 995.

"To constitute a merger, the highest security must be taken in satisfaction of the contract debt, and not as collateral to it. Stamper v. Johnson, 3 Texas, 1; Graves v. Allen, 66 Texas, 589, 2 S. W., 192.

"The question whether or not the parties intended that a merger of estate should take place is a question of fact. It is not settled by a mere recording of the deed. Chase v. Van Meter, 140 Ind., 321, 39 N. E., 455. But the intention that there should be no merger may be shown by the fact that the mortgagee does not cancel or surrender the evidences of the debt or release the mortgage, but on the contrary retains them. Burton v. Perry, 146 Ill., 71, 34 N. E., 60; Dunphy v. Riddle, 86 Ill., 22; Peterborough Savings Bank v. Pierce, 54 Neb., 712, 75 N. W., 20; Coleman Co. v. Rice, 115 Ga., 510, 42 S. E., 5; Gibbs v. Johnson, 104 Mich., 120, 62 N. W., 145; Quimby v. Williams, 67 N. H., 489, 41 Atl., 862, 68 Am. St. Rep., 685."

That Lloyd and his successor, Preston, did not intend at the time of receiving the deed from Woodward that the equity of redemption would be merged in them and foreclose the rights of Hill, is conclusive when considered in the light of their acts. It is undisputed that Woodward could not pay the interest; that LaRue and Parker were unable to pay either the principal or interest of the notes executed by Hill; that abstracts of judgments which they were unable to pay had been recorded and constituted a lien against the land; that Lloyd did take possession of the land under an agreement with Hill to rent it and apply the revenue to the payment of the notes; that possession of the land by Lloyd was in 1921; that in 1922 Preston, the successor of Lloyd and the executor of his estate, received a deed from Woodward; that in 1923 he filed suit against Hill for the principal, interest and attorney's fees of the notes and took judgment against him personally for that amount with a foreclosure of the vendor's lien against the land.

It is further shown that in 1924 they were contending in the appellate courts of this state that they were claiming prior rights in this land by reason of the vendor's lien notes executed by Hill

and, in 1925 asserted their rights by virtue of the vendor's lien notes by taking judgment and having an order of sale issued for that amount and undertook to foreclose the vendor's lien but were prevented by injunction. It is to be noted that the injunction was not sought on the ground that Preston, et al., did not have a valid lien against the land or that they were barred by limitation, but solely upon the ground of the equities belonging to Hill by reason of the contract and the acts of Lloyd and Preston under that contract.

We think the acts of Preston, et al., conclusively demonstrate that they did not elect to rescind and recover the land, but that they elected to affirm and obtain judgment against Hill individually and foreclose the vendor's lien against the land. Having elected and fixed their legal rights, they also fixed the legal rights of Hill. Defendants had the right to select their choice of remedies. When that was done they fixed their legal rights as well as the legal rights of Hill. Hill had no voice in the matter. But when they did make the choice they were bound by it. The rights of the parties did not rest upon the caprice of either party. They became fixed by law. Preston had the right to have judgment against Hill with a foreclosure of the vendor's lien. Hill had the right to pay the notes and take the land or let the land be sold. The courts of this state look with disfavor upon any party who invokes the jurisdiction of the courts to gain certain rights thereunder and obtain certain rights and advantages over an adversary, and then assert in another cause the very matter disclaimed in the former suit, as being contrary to every principle of right and equity. Smith v. Chipley, (Com. App.) 118 Texas, 415, 16 S. W. (2d) 269.

In our judgment, the statute of frauds does not apply in this case. Preston holding the possession of the land as mortgagee and trustee and having elected to affirm the contract and seek a judgment for the debt and foreclosure of the lien; having made a contract to take possession of the land and apply the rents to the payment of Hill's debt, is certainly in no position to invoke the protection of the statute of frauds to defeat the legal rights of Hill. The law of this state gives as a remedy the action of trespass to try title to one who has the right of possession to lands. The remedy of trespass to try title is given in all cases where the right of title or interest and possession of land may be involved. Hardy v. Beaty, 84 Texas, 562, 19 S. W., 778, 31 Am. St. Rep. 80; Mason v. Bender, 97 S. W., (Civ. App.) 715.

Defendants rely principally upon the case of Foster v. Ross, 33 Tex. Civ. App., 615, 77 S. W., 990, to sustain their contention

that the statute of frauds applies in this case. In our opinion, the facts in that case are different from the facts in this case. In the case of Foster v. Ross, Burnett secured a judgment foreclosing the vendor's lien and sold the property at foreclosure sale and bought the property in and the sheriff made a deed to it. Mrs. Foster sued on an alleged promise of Burnett to reconvey the land to her after he bought it at a foreclosure sale. The court in that case held that the statute of frauds did apply. In this case Preston had no deed from the sheriff. He did get a judgment of foreclosure but no sale under that judgment has ever been made and Preston has acquired no title to the property under his judgment of foreclosure. In order to sustain defendant's theory that the statute of frauds prevails in this case, we would have to ignore the essential facts alleged by plaintiff.

Nor do we think that the contention urged that there was no consideration for the agreement made between Lloyd and Hill with reference to Lloyd taking possession of the land and renting same, is sound or tenable. Under the terms of the contract, Lloyd was to take possession of the land and apply the rents therefrom to the debts due by Hill. Preston the successor of Lloyd became Hill's agent to collect the debt owing by Hill to Lloyd. Lloyd was not selling Hill anything nor conveying anything to him. Preston took charge of the land under the contract in 1921. In 1922 he claims to have obtained a deed from Woodward and in several instances afterwards he claimed the vendor's lien against the land and sought to foreclose his lien on the land and obtain judgment to that effect. Until he was enjoined from selling the land by virtue of equities existing between him and Hill, he never claimed the right to rescind and recover the possession and title to the land. At the time Lloyd agreed to take the land and apply the rents to the payment of Hill's debt, the principal of which was not then due, he had no conveyance from Woodward. The deed from Woodward was obtained later. That it was by virtue of the contract made between Lloyd and Hill that Lloyd got possession of the premises and collected the rents from year to year as has already been set out. When we come to apply the well recognized principles of law and equity to the facts alleged by plaintiff, it is clear that the contract made by Hill and Lloyd was supported by a sufficient consideration. 13 C. J., 355, sec. 213.

It is contended that the rule announced in the case of Hill v. Hoeldtke, 104 Texas, 594, 142 S. W., 871, 40 L. R. A. (N. S.)

672, controls this case. We do not agree to this contention. To apply the rule announced in the foregoing case to the case at bar, would require the main and essential facts in this case to be overlooked. What are the salient facts in the Hill case, supra? At the time Hill purchased the land from McLeary there was outstanding against the land, among other amounts, a note for $140, which McLeary represented at the time the trade was made with Hill had been paid. As a matter of fact, the note had not been paid at the time the trade was made, but within a short while thereafter was returned to McLeary for cancellation. At the time Hill reconveyed the land to McLeary he did not know the facts in regard to the status of the $140 note, and his reconveyance to McLeary of the land was not because of any fraud supposed to have been practiced upon him by McLeary. Judgment was rendered in favor of Hoeldtke and Leach for their notes, interest and attorney's fee, against Horstman and McLeary, with foreclosure of the vendor's lien on the land as against all the defendants. No personal judgment was rendered against Hill. In this case it is alleged that Lloyd conveyed the land to Hill and took vendor's lien notes against the land. Then Hill conveyed the land to LaRue and Parker, retaining a vendor's lien against the land to secure him, and then LaRue and Parker conveyed the land to Woodward, who took the land subject to the indebtedness executed by Hill to Lloyd. Woodward refused to pay the notes or the interest. LaRue and Parker were unable to pay it and did not pay it. Lloyd demanded of Hill the payment of the notes and entered into an agreement whereby Lloyd took possession of the land and was to apply the rents to the payment of the debt due by Hill. Afterwards, Preston, the successor to Lloyd and executor of his estate, sued Hill for the amount of the notes and took judgment against him individually for the amount of the notes with a foreclosure of his vendor's lien, and an order of sale was issued thereon. We think that the facts of this case clearly distinguish it from the case of Hill v. Hoeldtke, supra.

Much has been said about what the Supreme Court intended to hold in the case of Harris v. Masterson, 91 Texas, 171. Judge Gaines, in his opinion in that case, says that Harris, by conveying the land to Disney, had lost the equity of redemption, but he also says under the facts in that case that the title had become merged in Masterson and that the effect of this merger was to force an election on Masterson's part, and that if he waived his claim, the mortgage debt and all adverse claims against the mortgaged prem-

ises are extinguished. Quoting from the opinion in that case, the court said:

"Masterson having caused the decree to be executed and having purchased the land at the execution sale, is in the same position as if he had purchased directly from Disney; hence the case is not distinguished in principle from that of a mortgagor who has conveyed the premises to a grantee who has assumed to pay the mortgage debt and who in turn conveys the land to the mortgagee. *In such a case the legal and equitable title united in the mortgagee and if he waives his claim to the mortgage debt, all adverse claims against the premises are extinguished, but can he proceed against the mortgagor for his original debt? In similar cases the authorities seem to hold that the question of merger depends upon the intention of the parties and the equities of the particular transaction. The rule, however, seems to be that ordinarily, where the mortgagee acquires the equity of redemption in the land, he may elect to treat the mortgage as merged or as still in existence, as his interest may require, provided this may be done without prejudice to the rights of either party and there being no agreement to the contrary."* (Italics ours.)

According to the contention of the defendants under the deed from Woodward to Preston, the legal title was merged in Preston. He also held Hill's vendor's lien notes given for the purchase money of this land. What did he do with reference to the title or to the lien? He elected to affirm the contract and to foreclose his lien which prohibited him from rescinding the contract and recovering the title and possession of the land. Judge Gaines in the foregoing opinion further says:

"But when the mortgagor has conveyed the mortgaged premises and the grantee has assumed the mortgage debt, the land as between the mortgagor and all persons claiming under the latter becomes a primary fund for the payment of the debt."

When the opinion in the case of Harris v. Masterson, supra, is read in the light of the facts in this case, we find no conflict in that opinion with the conclusions reached in this case.

Applying the principles of the foregoing rules to the facts alleged by plaintiff, in our opinion the following issues are raised:

(a) That Lloyd and Preston were mortgagees in possession of the land.

(b) That as such mortgagees, they are bound to apply the rents derived from the land to the payment of the debt due by Hill.

(c) That the equity of redemption rests with Hill and he is entitled to the title and possession of the land upon payment of the vendor's lien notes executed by him.

(d) That defendants are entitled to a foreclosure of the vendor's lien notes against the land, subject to the equities to which Hill is entitled.

It follows from what we have said that the contentions made by the defendants against the cause of action alleged by plaintiff cannot be sustained. It also follows that in our judgment the trial court erred in sustaining a general demurrer to plaintiff's petition.

We conclude that the judgments of the Court of Civil Appeals and the trial court should be reversed and this cause be remanded to the district court for another trial in accordance with this opinion.

The foregoing is adopted as the opinion of the Supreme Court, and the judgments of the Court of Civil Appeals and the trial court will be reversed, and this cause remanded to the district court for another trial.

*C. M. Cureton,* Chief Justice.